DORRIS v DETROIT OSTEOPATHIC HOSPITAL CORPORATION

GREGORY v HERITAGE HOSPITAL

Docket Nos. 108613, 112711, 112712. Argued January 22, 1999 (Calendar Nos. 16-17). Decided June 9, 1999.

Deborah Dorris brought a medical malpractice action in the Wayne Circuit Court against Detroit Osteopathic Hospital Corporation. During discovery, she sought to compel the hospital to disclose the name of a patient who shared her hospital room and witnessed the alleged negligence of a hospital employee. The court, Sharon Tevis Finch, J., granted her motion to compel. The Court of Appeals, Saad, P.J., and Corrigan and R. A. Benson, JJ., reversed on the basis of *Schechet v Kesten*, 372 Mich 346 (1964), which held that MCL 600.2157; MSA 27A.2157 prohibits disclosure of the name of such a patient. 220 Mich App 248 (1996) (Docket No. 183036). The plaintiff appeals.

Eloise Gregory brought an action in the Wayne Circuit Court against Heritage Hospital, arising from an assault and battery she suffered while a patient at the hospital, alleging breach of contract. She maintained that Heritage had a contractual duty to protect patients under its care, and that it had inadequate staffing to supervise and monitor the behavior of the patients under its psychiatric care. In response to the plaintiff's interrogatories and request for production of documents, Heritage filed various motions for summary disposition. The court, Daphne Means Curtis, J., granted the plaintiff's motion to compel discovery, ordering Heritage to provide answers to the plaintiff's interrogatories, an incident report regarding the assault, the name of the patient who committed the assault, and other reports related to the assault. The Court of Appeals, Bandstra, P.J., and Sawyer and McDonald, JJ., denied leave to appeal (Docket Nos. 213224, 213225). Heritage appeals.

In an opinion by Justice Brickley, joined by Chief Justice Weaver, and Justices Taylor and Young, the Supreme Court *held*:

Under MCL 600.2157; MSA 27A.2157, the names of unknown patients are protected by the physician-patient privilege, and hospitals have a duty to refrain from disclosure. Information collected by a hospital for the purpose of retrospective review by a peer committee is protected from discovery pursuant to MCL 333.20175;

MSA 14.15(20175) and MCL 333.21515; MSA 14.15(21515). Supervision and monitoring of psychiatric patients in a psychiatric ward involves questions of professional medical management that cannot be judged by the common knowledge and experience of a jury.

1. The purpose of the physician-patient statute, MCL 600.2157; MSA 27A.2157, is to protect the confidential nature of the physician-patient relationship and to encourage a patient to make a full disclosure of symptoms and condition. The language of the statute is clear. Where a patient has neither voluntarily nor impliedly waived the privilege as specifically provided in the statute, there are strong public policy reasons for applying the physician-patient privilege to disclosure of an unknown patient's name. A patient who fears disclosure may be chilled from seeking medical assistance.

2. In *Gregory*, the trial court erred in ordering the hospital to provide the plaintiff with any investigative reports relative to the incident report; any statements made by any person with respect to the incident; and any notes, memoranda, records, and reports related to the incident. The information was collected by the hospital for the purpose of retrospective review by a peer committee, and thus is protected from discovery under MCL 333.20175; MSA 14.15(20175) and MCL 333.21515; MSA 14.15(21515). Because the plaintiff was not afforded the opportunity to challenge whether information sought was actually collected for the purpose of retrospective review by a peer committee, remand to the trial court is required to allow the plaintiff to test the veracity of the hospital's procedures.

3. The trial court in *Gregory* also erred in denying the hospital's motions for summary disposition because of the plaintiff's failure to file a notice of intent and an affidavit of merit. The supervision and monitoring of psychiatric patients in a psychiatric ward involves questions of professional medical management and, therefore, cannot be judged by the common knowledge and experience of a jury. Thus, the plaintiff's claim was one of medical malpractice and subject to MCL 600.2912b; MSA 27A.2912(2) and MCL 600.2912d; MSA 27A.2912(4). Because the plaintiff failed to comply with these provisions, the trial court erred in not granting the hospital's motions for summary disposition.

Justice CORRIGAN concurred in *Gregory*, but took no part in the decision of *Dorris*.

Justice KELLY, joined by Justice CAVANAGH, concurring in part and dissenting in part, stated that unknown patient names are not protected by the physician-patient privilege.

In holding that the names of unknown patients are protected by the physician-patient privilege, the majority has disregarded the plain language of the statute, unduly broadening the privilege. Michigan provides for expansive discovery, permitting parties to obtain discovery regarding any matter not privileged that is relevant to the subject matter involved in a pending action. Among the exceptions recognized by the Legislature is the physician-patient privilege, which provides that information falls within its purview only if it was necessary to enable a physician to prescribe for a patient.

*Dorris* affirmed.

*Gregory* reversed in part and remanded.

*DeNardis, McCandless & Muller, P.C.* (by *William McCandless, Michael G. Latiff,* and *Mark F. Miller*), for plaintiffs-appellants Dorris.

*Michael G. Kelman, P.C.* (by *Glenn A. Saltsman*), for plaintiff-appellee Gregory.

*Feikens, Stevens, Kennedy, Hurley & Galbraith, P.C.* (by *L. Neal Kennedy*), for defendant-appellee in *Dorris.*

*Willmarth, Tanoury, Ramar, Corbet, Garves & Shaw* (by *Daniel R. Corbet, Derek S. Wilczynski,* and *Elizabeth L. Sokol*) for defendant-appellant in *Gregory.*

BRICKLEY, J. We granted leave in these cases to determine if the physician-patient privilege set forth in MCL 600.2157; MSA 27A.2157 prevents the defendant hospitals from disclosing the identity of unknown third-party patients. We hold that the names of unknown patients are protected by the physician-patient privilege, and that defendant hospitals have a duty to refrain from disclosure. We also review the *Gregory* trial court's order that the defendant hospital provide Gregory with any investigative reports rela-

tive to the incident report; any statements made by any person with respect to the incident; and any notes, memoranda, records, and reports related to the incident. Additionally, we review the *Gregory* trial court's denial of the defendant hospital's motions for summary disposition for plaintiff's failure to file a notice of intent and for plaintiff's failure to file an affidavit of merit. We decline to review the *Gregory* trial court's partial denial of defendant's motion for partial summary disposition regarding plaintiff's express contract claim for violation of the statute of frauds and the Michigan Court Rules. We affirm the judgment of the Court of Appeals with respect to *Dorris v Detroit Osteopathic Hospital.* We partially reverse the trial court in *Gregory v Heritage Hospital* and remand the case for further proceedings consistent with this opinion.

I

A. *DORRIS v DETROIT OSTEOPATHIC HOSPITAL*

This is an interlocutory appeal in a medical malpractice action. Plaintiffs Deborah Dorris and Raymond Dorris[1] appeal the Court of Appeals reversal of the trial court's order compelling defendant Detroit Osteopathic Hospital Corporation to reveal the name of the patient who shared a hospital room with Dorris.

Plaintiff Dorris visited the Riverside Osteopathic Hospital[2] emergency room on the evening of June 18,

---

[1] Because the claims of plaintiff Raymond Dorris are derivative, for the purposes of this opinion, "Dorris" will refer to Deborah Dorris only.

[2] Defendant oversees Riverside Osteopathic Hospital.

1993, complaining of nausea, vomiting, and diarrhea. The emergency room physician, Dr. Lusk, prescribed the drug Compazine, which was administered intravenously. After the Compazine was administered, Dorris had an apparent anaphylactic reaction to the drug. Dorris' condition later stabilized, and she was discharged within twenty-four hours. Dorris claimed that she had refused the Compazine because she had a history of allergic reactions to medicines. Dorris alleged that she instead requested Lomatil, which she previously had taken without incident, but Dr. Lusk refused her request. Dorris stated that she also told the nurse who put Compazine into the intravenous bag that she did not want the medicine.

Dorris filed suit in March 1994 and alleged that the hospital's employee negligently administered Compazine in violation of the standard of care for an emergency room physician and against Dorris' specific instructions. Dorris' complaint alleges damages for the allergic reaction, as well as pain, suffering, humiliation, and great emotional and mental distress. Dorris' husband alleges damages as a result of loss of consortium.

Dorris claims that the patient who shared her hospital room witnessed Dorris' refusals of Compazine. During discovery, plaintiff moved to compel defendant to disclose the name of that patient. The circuit court granted the motion. The Court of Appeals reversed. 220 Mich App 248; 559 NW2d 76 (1996). The Court of Appeals based its holding on *Schechet v Kesten*, 372 Mich 346, 351; 126 NW2d 718 (1964). In *Schechet*, this Court stated that MCL 600.2157; MSA 27A.2157 "prohibits the physician from disclosing, in the course of any action wherein his patient or

patients are not involved and do not consent, even the names of such noninvolved patients."

Plaintiff Dorris appeals the decision of the Court of Appeals. 457 Mich 866 (1998).

### B. *GREGORY v HERITAGE HOSPITAL*

In her complaint, plaintiff Eloise Gregory alleges that she was the victim of an assault and battery occurring while she was a patient at defendant Heritage Hospital on May 13, 1997. She claims that she was awakened because of a physical altercation between her roommate and another patient from across the hall. Gregory alleges that she was grabbed by defendant Jane Doe who pushed her to the ground and beat her, causing her to lose consciousness and sustain serious injuries. Additionally, Gregory alleges breach of contract by Heritage. Gregory argues that this contract gave rise to a duty of Heritage to protect patients while under its care. Gregory also alleges that Heritage had inadequate staffing to supervise and monitor the behavior of the patients under its psychiatric care.

Gregory served Heritage with interrogatories and a request for production of documents that included: any incident/investigative reports relating to the incident; any statements made by any person with respect to the incident; and any notes, memoranda, records, and reports related to the incident.

Heritage objected to the discovery requests. In lieu of answering the complaint, Heritage filed three motions for summary disposition. Gregory subsequently filed a motion to compel discovery. Heritage's motions for summary disposition were in large part

denied, and Gregory's motion to compel discovery was granted.[3] Heritage was ordered to provide Gregory with answers to her interrogatories; the incident report involving Jane Doe; Jane Doe's full name, last known address, telephone number, social security number, or date of birth; any investigative reports relative to the incident report; any statements made by any person with respect to the incident; and any notes, memoranda, records, and reports related to the incident.

Heritage applied for leave to appeal in the Court of Appeals, which was denied. This Court granted Heritage's application for leave to appeal and combined this case with *Dorris v Detroit Osteopathic Hosp.* 458 Mich 876 (1998).

II

We first address whether the defendant hospitals are required to provide identification information about other unknown patients to the plaintiffs. The physician-patient statute in Michigan, found at MCL 600.2157; MSA 27A.2157, provides:

> Except as otherwise provided by law, a person duly authorized to practice medicine or surgery shall not disclose any information that the person has acquired in attending a patient in a professional character, if the information was necessary to enable the person to prescribe for the patient as a physician, or to do any act for the patient

[3] The trial court denied the defendant's motions regarding plaintiff's failure to file a notice of intent, failure to file an affidavit of merit, and express contract claim, but granted defendant's motion regarding plaintiff's implied contract claim. This opinion does not address defendant's challenge to the trial court's denial of defendant's motion for summary disposition regarding the express contract claim.

as a surgeon. If the patient brings an action against any defendant to recover for any personal injuries, or for any malpractice, and the patient produces a physician as a witness in the patient's own behalf who has treated the patient for the injury or for any disease or condition for which malpractice is alleged, the patient shall be considered to have waived the privilege provided in this section as to another physician who has treated the patient for the injuries, disease, or condition. If a patient has died, the heirs at law of the patient, whether proponents or contestants of the patient's will, shall be considered to be personal representatives of the deceased patient for the purpose of waiving the privilege under this section in a contest upon the question of admitting the patient's will to probate. If a patient has died, the beneficiary of a life insurance policy insuring the life of the patient, or the patient's heirs at law, may waive the privilege under this section for the purpose of providing the necessary documentation to a life insurer in examining a claim for benefits.

The physician-patient privilege was not recognized at common law, and, thus, its scope is controlled by the language of the statute. *People v Johnson*, 111 Mich App 383; 314 NW2d 631 (1981).

It is well established that the purpose of the statute is to protect the confidential nature of the physician-patient relationship and to encourage a patient to make a full disclosure of symptoms and condition. *Domako v Rowe*, 438 Mich 347, 354; 475 NW2d 30 (1991); *Gaertner v Michigan*, 385 Mich 49, 53; 187 NW2d 429 (1971); *Schechet, supra* at 351; 81 Am Jur 2d, Witnesses, § 438, p 392.

This Court, in *Gaertner, supra* at 53, summarized the purpose of the statute as follows:

The purpose of this statute is to protect the confidential nature of the physician-patient relationship. In *Schechet v*

*Kesten,* 372 Mich 346, 351 [126 NW2d 718 (1964)], this Court said of the statute:

"It prohibits the physician from disclosing, in the course of any action wherein his patient or patients are not involved and do not consent, even the names of such noninvolved patients."

The privilege of confidentiality belongs to the patient; it can be waived only by the patient. *Schechet v Kesten, supra.* In *Storrs v Scougale,* 48 Mich 387, 395 [12 NW 502 (1882)], this Court by Justice COOLEY said of this privilege of confidentiality:

"[A] privilege is guarded which does not belong to him [the physician] but to his patient, and which continues indefinitely, and can be waived by no one but the patient himself."

In *Schechet,* this Court considered whether the physician-patient privilege prohibited the discovery of the names and treatment histories of patients in a libel and slander claim brought by plaintiff Dr. Schechet against defendant Dr. Kesten on the basis of an allegedly slanderous and libelous report Dr. Kesten made to a credentials committee about Dr. Schechet. Dr. Schechet sought the names and treatment histories regarding those patients whom Dr. Kesten accused Dr. Schechet of failing to appropriately treat in his report to the committee. This Court reversed the trial court's order of disclosure, stating:

Such veil of privilege is the patient's right. It prohibits the physician from disclosing, in the course of any action wherein his patient or patients are not involved and do not consent, even the names of such noninvolved patients. [372 Mich 351.]

In its decision in *Dorris v Detroit Osteopathic Hosp,* the Court of Appeals panel relied upon *Schechet* in finding that the names of nonparty

patients were protected by the physician-patient privilege and not subject to disclosure. Plaintiff Dorris argues that the panel committed error requiring reversal by wrongfully relying on this dicta from *Schechet.* Rather, Dorris argues that this Court should follow *Porter v Michigan Osteopathic Hosp Ass'n, Inc,* 170 Mich App 619; 428 NW2d 719 (1988). In *Porter,* the plaintiff sought disclosure of the names and information regarding two other patients who allegedly raped her while she was a patient at the Michigan Osteopathic Hospital. In upholding the trial court's order of disclosure, the Court of Appeals found that disclosure of the names and addresses of unknown patients who were suspected as assailants did not require disclosure of information necessary for treatment or diagnosis pursuant to MCL 600.2157; MSA 27A.2157.[4] Thus, the Court of Appeals found that the names and addresses of the unknown patients were discoverable.

The *Dorris* panel noted the *Porter* dissent that found that the physician-patient privilege "statute has not been construed as limited to information solely necessary for treatment." *Porter,* 170 Mich App 627 (MACKENZIE, J., dissenting). However, the *Dorris* panel noted that in *Porter* there were stronger policy reasons for disclosure, because the plaintiff was seeking the name of the patients who allegedly attacked her,

---

[4] Given that *Porter* also involved the psychiatrist-patient privilege, the Court of Appeals found that that privilege only extended to information necessary for treatment or diagnosis as well. MCL 330.1750(1)(c); MSA 14.800(750)(1)(c) provided:

"Privileged communication" means a communication made to a psychiatrist or psychologist in connection with the examination, diagnosis, or treatment of a patient, or to another person while the other person is participating in the examination, diagnosis, or treatment.

whereas, in *Dorris*, the plaintiff was only seeking the name of the patient who may have overheard a conversation between the plaintiff and medical personnel.

Gregory argues that her case presents stronger reasons for disclosure than those argued in *Dorris* and *Porter*. She argues that in the present case, the information requested is required to identify a party to the litigation. She would have this Court hold that, unless the information is necessary for the purpose of examination, diagnosis, or treatment, it is discoverable. She further argues that the identity of the unknown patient is not protected by the physician-patient privilege.

This state has a strong historical commitment to a far-reaching, open, and effective discovery practice. *Daniels v Allen Industries, Inc,* 391 Mich 398, 403; 216 NW2d 762 (1974). "[T]he Michigan Court Rules of 1985 in no way acted to restrict discovery or to modify this commitment to open discovery." *Domako,* 438 Mich 359. MCR 2.302(B)(1), which governs the scope of permissible discovery, provides:

> In General. Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of another party, including the existence, description, nature, custody, condition, and location of books, documents, or other tangible things and the identity and location of persons having knowledge of a discoverable matter. It is not ground for objection that the information sought will be inadmissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

MCR 2.302(B)(1) clearly prohibits discovery of privileged information. We agree with Judge MACKENZIE's dissent in *Porter, supra* at 627, that "[t]he concept of privilege thus supersedes even the liberal discovery principles of this state."

The language of § 2157 is clear in its prohibition of disclosure of privileged information. In accordance with prior rulings of this Court, particularly *Schechet*, that the purpose of the privilege is to encourage patients' complete disclosure of all symptoms and conditions by protecting the confidential relationship between physician and patient, we find requiring the defendant hospitals to disclose the identity of unknown patients would be in direct contradiction of the language[5] and established purpose of the stat-

---

[5] Black's Law Dictionary (6th ed) defines "prescribe," in pertinent part, as:

> In a medical sense "prescribe" means to direct, designate, or order the use of a particular remedy, therapy, medicine, or drug. [*Id.* at 1183.]

*Random House Webster's College Dictionary* defines "prescribe," in pertinent part, as:

> to designate or order the use of (a medicine, treatment, etc.) . . . to order a treatment or medicine. [*Id.* at 1067.]

Given these definitions, "prescribe" should be interpreted broadly enough to encompass any information acquired to allow the physician to order or recommend any treatment for a patient.

Additionally, we note that, pursuant to Michigan Administrative Code, it is necessary for a physician to obtain a patient's name before a prescription can be written for the patient. Michigan Administrative Code, R 338.479b provides, in pertinent part:

> Rule 9b. (1) A prescriber who issues a written prescription for a noncontrolled legend drug shall date and sign the prescription and shall ensure that the prescription contains all of the following information:

ute.[6]

Historically, confidentiality has been understood to be necessary to promote full disclosure of a patient's medical history and present medical concerns. See *Briesenmeister v Knights of Pythias*, 81 Mich 525, 531; 45 NW 977 (1890). As the dissent notes, "information falls within the purview of the physician-patient privilege only if it was 'necessary' to enable a physician 'to prescribe' for a patient." *Post* at 50-51. The dissent goes on to argue that we have disregarded this language and render the language of the

---

(a) *The full name of the patient for whom the drug is being prescribed.*

(b) The prescriber's printed name and address.

(c) The drug name and strength.

(d) The quantity prescribed.

(e) The directions for use.

(f) The number of refills authorized. [*Michigan Register*: 1998 MR 4, R 338.479b (emphasis added).]

As can be seen from this rule, which has the force of law, it is necessary for a physician to provide the patient's name when writing a prescription. Therefore, the patient's name is information acquired to allow the physician to order or recommend treatment for a patient.

[6] The dissent argues that by not addressing the distinction that plaintiffs are requesting patient names from a hospital, as opposed to a physician, we are imputing the physician-patient privilege to the hospital. However, in *Massachusetts Mut Life Ins Co v Michigan Asylum for the Insane Bd of Trustees*, 178 Mich 193, 204; 144 NW 538 (1913), quoting *Smart v Kansas City*, 208 Mo 162, 198; 105 SW 709; 14 LRA Ann Cas 565 (1907), this Court stated:

"[I]t seems that it must follow as a natural sequence that when the physician subsequently copies that privileged communication upon the record of the hospital, it still remains privileged. If that is not true, then the law which prevents the hospital physician from testifying to such matters could be violated both in letter and spirit and the statute nullified by the physician copying into the record all the information acquired by him from his patient, and then offer or permit the record to be offered in evidence containing the diagnosis, and thereby accomplish, by indirection, that which is expressly prohibited in a direct manner."

statute surplusage. However, patients armed with the knowledge that their name may not be kept confidential may not be as willing to reveal their full medical history for fear that, ultimately, that information, too, may lose its confidential status. This chilling of the patient's desire to disclose would have a detrimental effect on the physician's ability to provide effective and complete medical treatment and is therefore "necessary" to enable a physician "to prescribe" for a patient.[7]

A patient may intentionally and voluntarily waive the privilege. See *Kelly v Allegan Circuit Judge*, 382 Mich 425; 169 NW2d 916 (1969). A patient may also impliedly waive the privilege as specifically provided for with § 2157. However, the patients in the present cases have neither voluntarily nor impliedly waived their right to the privilege. Therefore, this Court's rationale in *Schechet* is equally applicable to the present cases. That Court found:

> It need only be said that no question of waiver of privilege is before us; . . . that the third party information plaintiff would have disclosed could in no view of the cited rules of court be regarded as "matter not privileged which is admissible under the rules of evidence governing trials," and that the circuit court erred reversibly in failing to uphold the defendant physician's right—no duty—to refrain from disclosure . . . . [372 Mich 350-351.]

III

In *Gregory*, the trial court ordered the defendant hospital to provide Gregory with any investigative

---

[7] Therefore, the Court of Appeals decision in *Porter* is overruled to the extent that it is contrary to this opinion.

reports relative to the incident report; any statements made by any person with respect to the incident; and any notes, memoranda, records, and reports related to the incident. Heritage argues that the incident report, as well as any other information maintained in furtherance of the hospital's quality assurance and peer review function is protected from discovery by statute.

Two Michigan statutes govern the confidentiality of records, reports, and other information collected or used by peer review committees in the furtherance of their duties. MCL 333.20175; MSA 14.15(20175) addresses a hospital's duty to keep and maintain records regarding all treatment given to patients at that facility. It also addresses the confidentiality of peer review records. Section 20175(8) provides:

> The records, data, and knowledge collected for or by individuals or committees assigned a professional review function in a health facility or agency are confidential, shall be used only for the purposes provided in this article, are not public records, and are not subject to court subpoena.

Further evidence of the Legislature's intent to fully protect quality assurance/peer review records from discovery is found at MCL 333.21515; MSA 14.15(21515), which provides:

> The records, data, and knowledge collected for or by individuals or committees assigned a review function described in this article are confidential and shall be used only for the purposes provided in this article, shall not be public records, and shall not be available for court subpoena.

In *Gallagher v Detroit-Macomb Hosp Ass'n*, 171 Mich App 761; 431 NW2d 90 (1988), the Court of

Appeals considered whether an incident report prepared regarding Gallagher's slip and fall while a patient at South Macomb Hospital could be introduced at trial. The Court of Appeals affirmed the trial court's ruling refusing to permit Gallagher to introduce the incident report. The *Gallagher* Court noted that the Public Health Code requires hospitals to engage in reviews of their practices and procedures in an effort to improve the quality of patient care. "To achieve this end, the Legislature has exempted from court subpoena information and records compiled in furtherance of improving health care and reducing morbidity and mortality." 171 Mich App 768.

Hospitals are required to establish peer review committees whose purposes are to reduce morbidity and mortality and to ensure quality care. MCL 333.21513; MSA 14.15(21513).[8] In *Attorney General v Bruce*, 422 Mich 157, 169; 369 NW2d 826 (1985), this Court stated:

> The rationale for protecting the confidentiality of the records, data, and knowledge of such [peer review] committees was set forth in an oft-quoted opinion of the United States District Court for the District of Columbia:

---

[8] MCL 333.21513; MSA 14.15(21513) provides, in pertinent part:

The owner, operator, and governing body of a hospital licensed under this article:

*     *     *

(d) Shall assure that physicians and dentists admitted to practice in the hospital are organized into a medical staff to enable an effective review of the professional practices in the hospital for the purpose of reducing morbidity and mortality and improving the care provided in the hospital for patients. This review shall include the quality and necessity of the care provided and the preventability of complications and deaths occurring in the hospital.

"Confidentiality is essential to effective functioning of
these staff meetings; and these meetings are essential to the
continued improvement in the care and treatment of
patients. Candid and conscientious evaluation of clinical
practices is a *sine qua non* of adequate hospital care. To
subject the discussions and deliberations to the discovery
process, without a showing of exceptional necessity, would
result in terminating such deliberations. [Emphasis in origi-
nal. *Bredice v Doctors Hosp, Inc,* 50 FRD 249, 250 (D DC,
1970), *aff'd without opinion* 156 US App DC 199; 479 F2d
920 (1973).]"

Additionally, in *Monty v Warren Hosp Corp,* 422
Mich 138, 147; 366 NW2d 198 (1985), this Court
found that in determining whether the information is
privileged, "the court may wish to consider the hospi-
tal's bylaws and internal regulations, and whether the
committee's function is one of current patient care or
retrospective review."

In the present case, defendant Heritage provided
the affidavit of Therese Oziemski, Manager of Quality
and Utilization Management at Heritage Hospital.
According to Ms. Oziemski's affidavit, the incident
report and other investigative documents sought by
plaintiff Gregory are used for the purpose of main-
taining health care standards at the hospital, improv-
ing the quality of care provided to patients, and
reducing morbidity and mortality within the hospital.

Hospital personnel are expected to give their hon-
est assessment and reviews of the performance of
other hospital staff in incidents such as the one in the
present case. Absent the assurance of confidentiality
as provided by §§ 21515 and 20175(8), the willingness
of hospital staff to provide their candid assessment
will be greatly diminished. This will have a direct
effect on the hospital's ability to monitor, investigate,

and respond to trends and incidents that affect patient care, morbidity, and mortality.

Given that Heritage offered evidence in the form of Ms. Oziemski's affidavit that the information sought by Gregory was collected for the purpose of retrospective review by the peer committee, the trial court erred in ordering Heritage to produce the incident reports and other related investigatory documents. Gregory was not afforded the opportunity to challenge this evidence regarding whether it was actually collected for the purpose of retrospective review by the peer committee. Therefore, we remand to the trial court to allow plaintiff to test the veracity of the hospital's procedures.

IV

Heritage argues that Gregory's claim that defendant Heritage failed to properly supervise and monitor patients is a medical malpractice action requiring a notice of intent to sue and an affidavit of merit and that the trial court erred in finding that the claim was an ordinary negligence action.

"[A] complaint cannot avoid the application of the procedural requirements of a malpractice action by couching its cause of action in terms of ordinary negligence." *McLeod v Plymouth Court Nursing Home*, 957 F Supp 113, 115 (ED Mich, 1997), citing *MacDonald v Barbarotto*, 161 Mich App 542; 411 NW2d 747 (1987).

In the present case, plaintiff Gregory argues that the claim is an ordinary negligence action and not a medical malpractice action. Therefore, the claim is

not subject to MCL 600.2912b; MSA 27A.2912(2) or to
MCL 600.2912d; MSA 27A.2912(4).

MCL 600.2912b; MSA 27A.2912(2) provides:

(1) Except as otherwise provided in this section, a per-
son shall not commence an action alleging medical mal-
practice against a health professional or health facility
unless the person has given the health professional or
health facility written notice under this section not less
than 182 days before the action is commenced.

\*      \*      \*

(4) The notice given to a health professional or health
facility under this section shall contain a statement of at
least all of the following:

(a) The factual basis for the claim.

(b) The applicable standard of practice or care alleged
by the claimant.

(c) The manner in which it is claimed that the applicable
standard of practice or care was breached by the health
professional or health facility.

(d) The alleged action that should have been taken to
achieve compliance with the alleged standard of practice or
care.

(e) The manner in which it is alleged the breach of the
standard of practice or care was the proximate cause of the
injury claimed in the notice.

(f) The names of all health professionals and health facil-
ities the claimant is notifying under this section in relation
to the claim.

MCL 600.2912d; MSA 27A.2912(4) provides:

(1) Subject to subsection (2), the plaintiff in an action
alleging medical malpractice or, if the plaintiff is repre-
sented by an attorney, the plaintiff's attorney shall file with
the complaint an affidavit of merit signed by a health pro-
fessional who the plaintiff's attorney reasonably believes
meets the requirements of an expert witness under section

2169. The affidavit of merit shall certify that the health professional has reviewed the notice and all medical records supplied to him or her by the plaintiff's attorney concerning the allegations contained in the notice and shall contain a statement of each of the following:

(a) The applicable standard of practice or care.

(b) The health professional's opinion that the applicable standard of practice or care was breached by the health professional or health facility receiving the notice.

(c) The actions that should have been taken or omitted by the health professional or health facility in order to have complied with the applicable standard of practice or care.

(d) The manner in which the breach of the standard of practice or care was the proximate cause of the injury alleged in the notice.

In *Bronson v Sisters of Mercy Health Corp*, 175 Mich App 647; 438 NW2d 276 (1989), the plaintiff's complaint included allegations that the defendant hospital had failed to supervise and adequately maintain its staff. The plaintiff argued that the trial court erred in granting summary disposition for failure to file the claim within the two-year period of limitation applicable to medical malpractice claims, because the complaint stated a claim for ordinary negligence only, which is governed by a three-year period of limitation. The Court of Appeals affirmed the trial court's order of summary disposition, agreeing with the trial court that the allegations within the plaintiff's complaint involve issues of medical judgment.

The key to a medical malpractice claim is whether it is alleged that the negligence occurred within the course of a professional relationship. The providing of professional medical care and treatment by a hospital includes supervision of staff physicians and decisions regarding selection and retention of medical staff. [175 Mich App 652-653 (citations omitted).]

The determination whether a claim will be held to the standards of proof and procedural requirements of a medical malpractice claim as opposed to an ordinary negligence claim depends on whether the facts allegedly raise issues that are within the common knowledge and experience of the jury or, alternatively, raise questions involving medical judgment. *Wilson v Stilwill*, 411 Mich 587, 611; 309 NW2d 898 (1981); *McLeod v Plymouth Court Nursing Home*, *supra* at 115. In *Starr v Providence Hosp*, 109 Mich App 762, 766; 312 NW2d 152 (1981), the Court of Appeals found that issues involving whether the defendant hospital exercised appropriate supervision in a "special care unit" were "issues involving professional judgments which are beyond the common knowledge and experience of laymen to judge."

In *Waatti v Marquette General Hosp, Inc*, 122 Mich App 44, 49; 329 NW2d 526 (1982), the Court of Appeals held that "[w]hether a seizure patient requires constant medical attendance or restraints is an issue of medical management to be established by expert testimony," citing *Wilson v Stilwill* and *Starr v Providence Hosp, supra*.

Count III of Gregory's complaint makes the three following allegations:

> 17. That Defendant Hospital owed a duty to its patients to hire employees who would protect them from other patients with violent propensities and to closely monitor those patients with such propensities.
>
> 18. That Defendant Hospital also owed a duty to its patients to have adequate staffing to control the behavior of the patients under psychiatric care at Defendant Hospital.
>
> 19. That Defendant breached these duties owed to Plaintiff by having insufficient staff to monitor the behavior of its patients and by allowing patients with violent propensi-

ties to roam around the hospital and enter other patients' rooms without supervision.

As in *Bronson*, *Starr*, and *Waatti*, these allegations concerning staffing decisions and patient monitoring involve. questions of professional medical management and not issues of ordinary negligence that can be judged by the common knowledge and experience of a jury. The ordinary layman does not know the type of supervision or monitoring that is required for psychiatric patients in a psychiatric ward. Thus, the trial court erred in not requiring that plaintiff provide a notice of intent to sue and an affidavit of merit as required by §§ 2912b and 2912d.

We note that the appropriate sanction for the failure to provide a notice of intent to sue is dismissal without prejudice. See *Neal v Oakwood Hosp*, 226 Mich App 701, 715; 575 NW2d 68 (1997).

As to the appropriate sanction for failure to file an affidavit of merit, we find in the present case that dismissal without prejudice is also appropriate. In *VandenBerg v VandenBerg*, 231 Mich App 497, 502; 586 NW2d 570 (1998), the Court of Appeals found that the purpose of the statute was to prevent frivolous medical malpractice claims. In that case, plaintiff did not file an affidavit of merit at the time of filing the complaint; however, the defendants did receive an affidavit of merit at the same time they were served with the summons and the complaint. The Court of Appeals found that defendants did not suffer any prejudice because "they had access to the affidavit of merit from the moment they received the complaint." *Id.* at 503. In the present case, plaintiff's complaint was unaccompanied by an affidavit of merit at the time of filing and service upon the defendant, and at

no time has plaintiff ever supplemented her complaint with an affidavit of merit. Under these circumstances, we hold that dismissal without prejudice would be the appropriate sanction for plaintiff's failure to comply with § 2912d.

CONCLUSION

We hold that the names of unknown patients are protected by the physician-patient privilege, MCL 600.2157; MSA 27A.2157, and that the defendant hospitals have a duty to refrain from disclosure. The language of MCL 600.2157; MSA 27A.2157 is clear in its prohibition of disclosure of privileged information. Where a patient has neither voluntarily waived the privilege nor impliedly done so as specifically provided within § 2157, there are strong public policy reasons for applying the physician-patient privilege to disclosure of an unknown patient's name. A patient who fears disclosure may be chilled from seeking medical assistance.

We also hold that the *Gregory* trial court erred in ordering the defendant hospital to provide plaintiff with any investigative reports relative to the incident report; any statements made by any person with respect to the incident; and any notes, memoranda, records, and reports related to the incident. Defendant argues that this information was collected by the defendant hospital for the purpose of retrospective review by a peer committee and should be protected from discovery pursuant to MCL 333.20175; MSA 14.15(20175) and MCL 333.21515; MSA 14.15(21515). However, because plaintiff was not afforded the opportunity to challenge whether information sought was actually collected for the purpose of retrospec-

tive review by a peer committee, we remand to the trial court to allow plaintiff to test the veracity of defendant hospital's procedures.

We also hold that the *Gregory* trial court erred in denying defendant hospital's motions for summary disposition for plaintiff's failure to file a notice of intent and for plaintiff's failure to file an affidavit of merit. The supervision and monitoring of psychiatric patients in a psychiatric ward involves questions of professional medical management and, therefore, cannot be judged by the common knowledge and experience of a jury. Thus, plaintiff Gregory's claim was one of medical malpractice and subject to MCL 600.2912b; MSA 27A.2912(2) and MCL 600.2912d; MSA 27A.2912(4). Given that plaintiff Gregory failed to comply with these provisions, the trial court erred in not granting the defendant hospital's motions for summary disposition on this matter.

Accordingly, we affirm the judgment of the Court of Appeals with respect to *Dorris v Detroit Osteopathic Hosp.* We partially reverse the judgment of the trial court in *Gregory v Heritage Hosp* and remand the case to that court for proceedings consistent with this opinion.

WEAVER, C.J., and TAYLOR, and YOUNG, JJ., concurred with BRICKLEY, J.

CORRIGAN, J., concurred with BRICKLEY, J., in *Gregory*, but took no part in the decision of *Dorris*.

KELLY, J. (*concurring in part and dissenting in part*). Although I concur with sections I, III, and IV of the majority opinion, I respectfully dissent from section II. In holding that the names of unknown patients

are protected by the physician-patient privilege, the majority has disregarded the language of the statute, unduly broadening the privilege.

Michigan provides for expansive discovery, permitting parties to obtain discovery regarding any matter not privileged that is relevant to the subject matter involved in a pending action. MCR 2.302(B)(1). Among the exceptions recognized by the Legislature is the physician-patient privilege, which states, in pertinent part:

> Except as otherwise provided by law, a person duly authorized to practice medicine or surgery shall not disclose any information that the person has acquired in attending a patient in a professional character, *if the information was necessary to enable the person to prescribe for the patient as a physician,* or to do any act for the patient as a surgeon. [MCL 600.2157; MSA 27A.2157 (emphasis added).]

The primary goal of interpreting a statutory provision, like the physician-patient privilege, is to ascertain and effectuate the intent of the Legislature. *Frankenmuth Mut Ins Co v Marlette Homes, Inc,* 456 Mich 511, 515; 573 NW2d 611 (1998). To accomplish this goal, we presume that every word in the statute has meaning and avoid any construction that renders any part surplusage. *Altman v Meridian Twp,* 439 Mich 623, 635; 487 NW2d 155 (1992).

The statutory section cited here provides that information falls within the purview of the physician-patient privilege only if it was "necessary" to enable a physician[1]

---

[1] The majority disregards the fact that plaintiffs are requesting patient names that were provided to a hospital, as opposed to a physician, essentially imputing the physician-patient privilege to the hospital. The majority seeks support for its decision from *Massachusetts Mut Life Ins Co v Michigan Asylum for the Insane Bd of Trustees,* 178 Mich 193, 204; 144 NW 538 (1913). It held that " 'when [a] physician subsequently copies [a] privileged communication upon the record of the hospital, it still remains privileged.' " However, the

"to prescribe"[2] for a patient. MCL 600.2157; MSA 27A.2157. Nevertheless, the majority disregards this limitation, rendering the language of the statute surplusage.

The majority chooses to rely on dicta from *Schechet v Kesten*, 372 Mich 346, 351; 126 NW2d 718 (1964):

> [The statute] protects, "within the veil of privilege," whatever in order to enable the physician to prescribe, "was disclosed to any of his senses, and which in any way was brought to his knowledge for that purpose." Such veil of privilege is the patient's right. It prohibits the physician from disclosing, in the course of any action wherein his patient or patients are not involved and do not consent, even the names of such noninvolved[3] patients. [Citation omitted.]

The majority here concludes that the name of a "non-involved patient" is protected by the privilege. However, it fails to explain how the name is necessary to enable someone to prescribe for the patient as a phy-

majority fails to distinguish between information provided to a physician that is copied to a hospital record, and information that is provided directly to the hospital.

[2] The majority concludes that " 'prescribe' should be interpreted broadly enough to encompass any information acquired to allow the physician to order or recommend any treatment for a patient." *Ante* at 37, n 5. It emphasizes that it "is necessary for a physician to obtain a patient's name before a prescription can be written for the patient." However, the majority fails to explain the necessity of acquiring the name of a patient before a prescription is written or of a patient who is not issued a prescription.

[3] This dicta provides only that the names of "noninvolved" patients are protected by this privilege. However, the majority, without explanation, expands this protection to the name of the "involved" party sought by plaintiff Gregory.

sician.[4] MCL 600.2157; MSA 27A.2157. By concluding that patient names are within the purview of the privilege, this Court has ignored several fundamental principles of statutory construction: that every word should be given meaning, if possible, and that any construction that renders part of a statute surplusage should be avoided. *Altman, supra* at 635.

Consistent with *Porter v Michigan Osteopathic Hosp Ass'n, Inc*,[5] information falls within the scope of the physician-patient privilege only if it is acquired by a physician in his professional character, and is " 'necessary to enable him to prescribe . . . as a physician.' " In *Porter*, the Court of Appeals properly held that disclosure of names of unknown patients suspected of assaulting the plaintiff did not require disclosure of information " 'necessary to enable [a physician] to prescribe . . . as a physician.' " *Id.* at 623.

The majority astutely notes that *Porter* also involved the psychiatrist-patient privilege, which "prevents the discovery of 'a communication made to a psychiatrist or psychologist in connection with the examination, diagnosis, or treatment of a patient . . . .' " *Id.* However, in *Porter*, the Court of Appeals properly held that disclosure of names of unknown patients suspected of assaulting the plaintiff did not require disclosure of information "necessary for pur-

---

[4] Unlike *Schechet*, in *Swickard v Wayne Co Medical Examiner*, 438 Mich 536, 561; 475 NW2d 304 (1991), this Court emphasized that the physician-patient privilege "provides that information is protected which is *'necessary* to enable the person to *prescribe* for the patient as a physician . . . .' " In *Swickard*, this Court concluded that information acquired in the performance of an autopsy fell outside the scope of the privilege because it was not obtained to prescribe treatment.

[5] 170 Mich App 619, 623; 428 NW2d 719 (1988).

poses of examination, diagnosis and treatment." *Id.*[6] As a result, the Court of Appeals concluded that the patient names were not protected by either privilege.

In this case, the majority disregards the plain language of the statute. Instead, it emphasizes that the purpose of the statute is to protect the confidential nature of the physician-patient relationship and to encourage a full disclosure of symptoms and conditions. *Domako v Rowe*, 438 Mich 347, 354; 475 NW2d 30 (1991).

However, in *Domako*, this Court explained:

> An attempt to use the privilege to control the timing of the release of information exceeds the purpose of the privilege and begins to erode the purpose of waiver by repressing evidence. Both consequences are anathema to the open discovery policy of our state. The statute and the court rule both allow waiver, thus striking an appropriate balance between encouraging confident disclosure to one's physician and providing full access to relevant evidence should a charge of malpractice follow treatment. [*Id.* at 355.]

Like the waiver provision, the limitation on information provided by the physician-patient privilege strikes a balance "between encouraging confident disclosure" and "providing full access to relevant evidence."[7] See *Domako, supra* at 355. I believe that the

---

[6] Given plaintiff Gregory sought the names of patients from a psychiatric ward, the names would not be protected by the psychiatrist-patient privilege unless they were necessary for purposes of "examination, diagnosis and treatment." *Id.*

[7] The majority attempts to rationalize the protection of patient names under the physician-patient privilege by explaining that the "chilling of the patient's desire to disclose would have a detrimental effect on the physician's ability to provide effective and complete medical treatment . . . ." *Ante* at 39. Therefore, it concludes protection of patient names is neces-

majority has upset this balance by unduly broadening the physician-patient privilege.

I would reverse the judgment of the Court of Appeals and conclude that the unknown patient names are not protected by the physician-patient privilege.

CAVANAGH, J., concurred with KELLY, J.

---

sary to enable a physician to prescribe for a patient. However, this rationale is flawed because the physician-patient privilege already strikes a balance between confident disclosure and full access to relevant evidence. *Id.* Therefore, such an expansion of the privilege is not necessary to enable a physician to prescribe for a patient.