# STATE OF MICHIGAN

# COURT OF APPEALS

---

ESTATE OF TERI RAY LUTEN, by JOSEPH
LUTEN, JR., Personal Representative,

      Plaintiff-Appellee,

v

GENESYS REGIONAL MEDICAL CENTER and
THOMAS ROGERS, PA-C,

      Defendants-Appellants,

and

GENERAL SURGEONS OF FLINT, PC and
BRIAN SHAPIRO, M.D.,

      Defendants.

UNPUBLISHED
May 3, 2018

No. 335460
Genesee Circuit Court
LC No. 13-100741-NH

---

Before: GLEICHER, P.J., and BOONSTRA and TUKEL, JJ.

PER CURIAM.

In this interlocutory appeal, defendants Genesys Regional Medical Center (GRMC) and Thomas Rogers, PA-C (Rogers) (collectively defendants), appeal by leave granted[1] the trial court's order denying their motion for summary disposition.[2] We reverse and remand for entry of summary disposition in favor of defendants on the issue of proximate cause only.

---

[1] *Estate of Teri Ray Luten v Genesys Regional Med Ctr*, unpublished order of the Court of Appeals, entered March 9, 2017 (Docket No. 335460).

[2] GRMC filed three motions for summary disposition in this matter, one of which was filed jointly with Rogers and related to the issue of proximate cause. Leave to appeal was only granted regarding the order denying the joint motion for summary disposition. See *Estate of Teri Ray Luten v Genesys Regional Med Ctr*, unpublished order of the Court of Appeals, entered March 9, 2017 (Docket No. 335460). Leave to appeal the order denying summary disposition related to codefendant Dr. Brian Shapiro and the issue of agency was denied. *Id.*

-1-

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This medical malpractice action arose out of plaintiff's decedent[3] Teri Ray Luten's gallbladder removal surgery. Dr. Brian Shapiro performed a laparoscopic cholecystectomy on Luten on January 7, 2011; she was discharged from GRMC the same day. Luten returned to the GRMC emergency room 4 days later, complaining of abdominal pain and dizziness. She was anemic and required a blood transfusion. Luten was examined by Dr. Shapiro, as well as Rogers, a physician's assistant. Dr. Shapiro recommended an exploratory laparoscopy. Dr. Shapiro performed the surgery on January 13, 2011, assisted by Rogers. During the procedure, bile was discovered entering Luten's abdominal cavity, so the procedure was converted to an "open laparotomy." Dr. Shapiro performed a "washout procedure" to remove the bile. Luten was discharged from GRMC on January 16, 2011 with two surgical drains in her abdomen. Luten returned to the GRMC emergency room on January 19, 2011 with abdominal pain. She was again anemic and had an elevated white blood cell count. A CT scan revealed bile around Luten's liver, spleen, and gallbladder. On January 20, 2011, an endoscopic retrograde cholangiopancreatography (ERCP) and a esophagogastroduodenoscopy (a surgical procedure) were performed by Dr. Justin Miller. Dr. Miller had to abort the procedure after discovering that Luten's hepatic duct was damaged. Luten later alleged that the duct had been clipped and injured during Dr. Shapiro's removal of her gallbladder. Luten required surgery to repair the duct. She suffered numerous complications that rendered surgery difficult and was ultimately hospitalized until March 28, 2011. She was also admitted to the hospital several more times in April, May, and June 2011.

Luten filed suit in 2013 against defendants as well as Dr. Shapiro and General Surgeons of Flint, PC. Relevant to this appeal, the complaint alleged that Rogers had a duty to perform a postoperative examination of Luten and diagnose her with a bile leak, and that Rogers had failed to consult a gastroenterologist or perform an ERCP, which resulted in a delay in diagnosing the hepatic duct injury and a delay in appropriate treatment. The complaint alleged that Rogers had violated the applicable standard of care of a physician's assistant with regard to Luten, and asserted that his violations were a proximate cause of Luten's injuries.

Relevant to this appeal, defendants' third motion for summary disposition argued that no genuine issue of material fact existed regarding whether Rogers's actions were a proximate cause of Luten's injuries. Defendants argued that it was undisputed that Rogers, as a physician's assistant, did not manage or dictate Luten's care, that there was no evidence that a discussion between Rogers and Dr. Shapiro regarding a GI consultation or ERCP would have prevented Luten's injuries, and that there was no causal link between Rogers's failure to document his discussion with Dr. Shapiro regarding Luten's injuries.

The trial court denied defendants' motion for summary disposition, stating only with regard to Rogers: "There is in my view a fact question as to the performance of the physician's

---

[3] Luten passed away on March 19, 2016. The lower court record does not indicate whether her death was a result of her injuries that are the subject of this medical malpractice action.

assistant." This appeal followed, limited to the issue of the trial court's denial of summary disposition to Rogers. This Court granted defendants' motion to stay the trial court proceedings pending appeal.[4]

## II. STANDARD OF REVIEW

We review de novo a trial court's decision regarding a motion for summary disposition. *Gorman v American Honda Motor Co, Inc*, 302 Mich App 113, 115; 839 NW2d 223 (2013). A motion for summary disposition under MCR 2.116(C)(10) challenges the factual sufficiency of a plaintiff's claim. *Id*. The trial court must consider the evidence in the light most favorable to the nonmoving party. *Id*. Summary disposition is proper under MCR 2.116(C)(10) if " 'there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law.' " *Id*. at 116 (citation omitted). There is a genuine issue of material fact " 'when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ.' " *Id*. (citation omitted). In reviewing the trial court's decision, we review only the evidence that was presented at the time the trial court made its decision on the motion. *Id*. at 120.

## III. ANALYSIS

Defendants argue that no genuine issue of material fact existed regarding the lack of proximate causation between Rogers's rendering of care as a physician's assistant and Luten's injuries, and that the trial court therefore erred by denying defendants' motion for summary disposition. We agree.

To establish a claim for medical malpractice, the plaintiff must establish: "(1) the appropriate standard of care governing the defendant's conduct at the time of the purported negligence, (2) that the defendant breached that standard of care, (3) that the plaintiff was injured, and (4) that the plaintiff's injuries were the proximate result of the defendant's breach of the applicable standard of care." *Kalaj v Khan*, 295 Mich App 420, 429; 820 NW2d 223 (2012). See also MCL 600.2912a. The plaintiff must provide expert testimony to establish the standard of care, any breaches thereof, and causation. *Kalaj*, 295 Mich App at 429. There must be facts in evidence to support expert witness testimony; however, circumstantial evidence enabling reasonable inferences is also sufficient. *Id*.

Defendants' motion did not relate to the standard of care that applies to Rogers, the alleged breaches of that standard by Rogers, or Luten's injury. Rather, defendants argued in the lower court, and now argue on appeal, that there was no proximate cause between Rogers's alleged breaches of the standard of care for a physician's assistant and Luten's injuries.

---

[4] *Estate of Teri Ray Luten v Genesys Regional Med Ctr*, unpublished order of the Court of Appeals, entered May 26, 2017 (Docket No. 335460).

An affidavit of meritorious defense authored by Rogers was filed by defendants on October 24, 2013. In the affidavit, Rogers asserted that he had complied with the standard of care regarding Luten:

Specifically, I appropriately diagnosed, addressed[,] and treated [Luten] post[]operatively on January 11, 2011, as [Luten] presented to the [GRMC emergency room] with chief complaint of abdominal pain. A hepatobiliary iminiodiacetic acid (HIDA) scan was performed. I assisted Dr. Shapiro in an exploratory laparoscopy on January 13, 2011. The laparoscopy was conducted within the standard of care. Post[]operatively, I noted that the patient was improving and discharged the patient.

Plaintiff's standard of care expert, Craig A. Baumgartner, PA-C, testified regarding the standard of care applicable to a physician's assistant, and to his opinion that Rogers's breach of that standard was established by the absence of any documentation showing that Rogers had discussed or recommended a gastroenterology (GI) consult or recommended that Dr. Shapiro perform an ERCP after Luten's HIDA scan indicated a bile leak on January 11, 2011. Baumgartner further opined that a GI consultation or ERCP could have identified the location of the leak and that, had Dr. Shapiro rejected Rogers's suggestions, it would have been "prudent" for Rogers to have documented it. Baumgartner theorized that had Rogers noted that Dr. Shapiro had rejected his suggestions in Luten's medical record, someone else may have seen it and wondered why Dr. Shapiro had not ordered an ERCP, thus causing an ERCP to be ordered sooner and allowing her bile leak to be fixed earlier. Baumgartner also opined that Rogers had failed to provide thorough discharge instructions to Luten regarding the ongoing issues that she could expect concerning her bile leak.

Because defendants only challenge the fourth element required to establish a claim of medical malpractice, the issue before this court is whether Rogers's alleged failure to discuss and document a discussion with Dr. Shapiro regarding a GI consultation or ERCP, and to provide information regarding the bile leak in Luten's discharge papers, were a proximate cause of Luten's injuries. *Kalaj*, 295 Mich App at 429. We conclude that plaintiff has not demonstrated a genuine issue of material fact related to this element. *Gorman*, 302 Mich App at 115.

Plaintiff must establish the proximate cause element of medical malpractice by a preponderance of the evidence in order to make out a prima facie case and survive summary disposition. See *Craig ex rel Craig v Oakwood Hosp*, 471 Mich 67, 86; 684 NW2d 296 (2004). Proximate cause is an "essential element" of any negligence claim, and it " 'involves examining the foreseeability of consequences, and whether a defendant should be held legally responsible for such consequences.' " *Ray v Swager*, 501 Mich 52, 63; 903 NW2d 366 (2017) (quotation omitted). "Proximate cause" includes cause in fact and legal cause. *Craig*, 471 Mich at 86.

The cause in fact element generally requires showing that "but for" the defendant's actions, the plaintiff's injury would not have occurred. On the other hand, legal cause or "proximate cause" normally involves examining the foreseeability of consequences, and whether a defendant should be held legally responsible for such consequences. [*Id.* at 86-87, quoting *Skinner v Square D Co*, 445 Mich 153, 163; 516 NW2d 475 (1994).]

-4-

To find that a defendant's negligence was a proximate or legal cause of the plaintiff's injuries, a court must first determine that the defendant's negligence was a cause in fact of the plaintiff's injuries. See *Craig*, 471 Mich at 87.

Plaintiff is not required to prove that Rogers's acts or omissions were the "sole catalyst" for Luten's injuries to establish proximate cause, but must introduce evidence demonstrating that Rogers's acts or omissions were "*a* cause" of Luten's injuries. *Id*. As our Supreme Court has explained:

> It is important to bear in mind that a plaintiff cannot satisfy this burden by showing only that the defendant may have caused his injuries. Our case law requires more than a mere possibility or a plausible explanation. Rather, a plaintiff establishes that the defendant's conduct was a cause in fact of his injuries only if he "set[s] forth specific facts that would support a reasonable inference of a logical sequence of cause and effect." A valid theory of causation, therefore, must be based on facts in evidence. And while " '[t]he evidence need not negate all other possible causes,' " this Court has consistently required that the evidence " 'exclude other reasonable hypotheses with a fair amount of certainty.' " [*Id*. at 87-88 (citations and quotations omitted).]

Plaintiff failed to demonstrate that the alleged breaches of the standard of care by Rogers were a proximate cause of Luten's injuries. Regarding Rogers's failure to discuss a GI consultation or ERCP with Dr. Shapiro, Dr. Shapiro did not recall discussing Luten's differential diagnosis with Rogers prior to the washout procedure on January 13, 2011. However, it was Dr. Shapiro's decision to perform the washout. Dr. Shapiro testified that even though there was a bile leak, he did not consider a GI consultation or ERCP because Luten was too sick to wait for such steps to be taken. In his estimation, Luten's bile peritonitis needed to be taken care of before undergoing a diagnostic procedure such as an ERCP. The risks associated with an ERCP prior to the washout included pancreatitis, small bowel rupture, aspiration pneumonia, or problems with the esophagus and throat. Dr. Shapiro testified that he believed that performing an ERCP prior to the washout would have been a hindrance to the subsequent procedure.

Rogers also testified that he and Dr. Shapiro did not discuss Dr. Shapiro's decision regarding an ERCP prior to the washout. Rogers testified that he did not believe that Luten needed an ERCP prior to the washout, but that it was up to Dr. Shapiro to make that decision. Rogers had never recommended an ERCP prior to surgery.

Dr. Harold A. Fenster, one of plaintiff's experts, provided testimony regarding the standard of care applicable to Dr. Shapiro and his purported breaches, rather than those applicable to Rogers. Dr. Fenster did not read the transcript from Rogers's deposition before being deposed. Dr. Fenster was not a trained physician's assistant, and he had no experience teaching in a physician's assistant program. Dr. Fenster had never been in a situation where a physician's assistant had disagreed with him and he changed his treatment plan as a result. Dr. Fenster was not aware from the record that Rogers had made any clinical decisions regarding the washout procedure as opposed to an ERCP. Dr. Fenster testified that typically in a laparoscopic cholecystectomy, a physician's assistant simply assists and holds the retractors, as Rogers did in this case.

Plaintiff's expert, Dr. Jason D. Green, also did not testify that Rogers's actions were a proximate cause of Luten's injuries. Dr. Green testified that Dr. Shapiro had breached the standard of care by ignoring Luten's bile leak and injuring her small intestine. Dr. Green understood that Dr. Shapiro had thought that Luten was too sick for an ERCP, but opined that had an ERCP been performed prior to January 13, 2011, Luten's outcome would have been different. However, when asked whether Rogers's alleged breaches of the standard of care were a cause of Luten's injuries, Dr. Green testified that he had no opinions related to Rogers "over and above any other healthcare worker." Dr. Green provided no testimony demonstrating that Rogers's actions were a proximate cause of Luten's injuries.

In sum, plaintiff has failed to demonstrate even factual causation, much less proximate cause. See *Craig*, 471 Mich at 87. The evidence, taken in a light most favorable to plaintiff, would not allow reasonable minds to conclude that but for Rogers's failure to discuss a GI consultation or ERCP with Dr. Shapiro, Luten's injuries would not have occurred. Rather, the evidence demonstrates that Dr. Shapiro did not believe that an ERCP was proper at the time because it would have hindered Luten's prompt treatment for removal of bile. It is pure speculation that a conversation between Rogers and Dr. Shapiro would have resulted in Dr. Shapiro ordering an ERCP or otherwise changed Luten's results.

In addition, plaintiff has not demonstrated that Rogers's alleged failure to document in Luten's medical record that Dr. Shapiro had declined to order a GI consult or ERCP was a proximate cause of Luten's injuries. Dr. Shapiro testified to his belief that an ERCP was unnecessary in Luten's case, but there was no documentation of such in Luten's medical record. Baumgartner testified that it would have been "prudent" for Rogers to have noted in the medical record that Dr. Shapiro had refused a GI consultation or ERCP, and that someone else "might have seen that" and wondered why, leading to faster treatment of Luten. However, Baumgartner admitted that this was "speculation," and that he did not know "what would have happened if it had been written down in the medical record." "[M]ore than a mere possibility" is required to demonstrate proximate cause. *Craig*, 471 Mich at 87. Baumgartner's speculative testimony does not meet this requirement. "A mere possibility of [proximate cause] is not sufficient, and when the matter remains one of pure speculation and conjecture, . . . it becomes the duty of the court to direct a verdict in favor of the defendant." *Genna v Jackson*, 286 Mich App 413, 418; 781 NW2d 124 (2009).

Furthermore, plaintiff has not demonstrated that Rogers's alleged failure to include information regarding further treatment of a bile leak in Luten's discharge papers on January 16, 2011 was a proximate cause of her injuries. Plaintiff argues that Rogers's failure to provide discharge information regarding the bile leak led Luten to become "deathly ill" after the washout, causing her to return to the hospital on January 18, 2011. However, as a physician's assistant, Rogers could not discharge patients on his own. Luten's discharge was cleared by Dr. Shapiro or his partner.

As noted above, plaintiff is required to provide expert testimony to establish causation. *Kalaj*, 295 Mich App at 429. None of plaintiff's expert witnesses stated that Rogers's discharge instructions were a breach of the standard of care, or that Luten's injuries were foreseeable due to Rogers's discharge instructions. It is not clear from the documents contained in the lower court record that any of the expert witnesses even addressed the discharge papers. The Michigan

Supreme Court has determined that issues regarding "medical management," for example, staffing decisions and patient monitoring, are synonymous with questions of "medical judgment," and therefore, must be established by expert testimony. See *Dorris v Detroit Osteopathic Hosp Corp*, 460 Mich 26, 46-47; 594 NW2d 455 (1999). Discharge procedures may properly be considered a manner of medical management. See *id*. Therefore, the lack of expert testimony linking Rogers's discharge instructions to Luten's injury is fatal to plaintiff's argument.

## IV.  RESPONSE TO DISSENT

Our partially dissenting colleague charges that our holding "directly contradicts binding precedent and reflects a misunderstanding of basic causation principles." It does neither.

The dissent contends that our analysis conflicts with our Supreme Court's order in *Martin v Ledingham*, 488 Mich 987; 791 NW2d 122 (2010). But *Martin* is distinguishable. In *Martin*, the defendant nurses had failed to provide the defendant doctor with information about the plaintiff's condition that was relevant to the doctor's post-surgical decision-making. In this case, by contrast, no evidence was presented that Rogers had failed to inform Dr. Shapiro of an aspect of Luten's condition; rather, plaintiff's claim was based solely on the fact that Rogers had not suggested an ERCP to Dr. Shapiro. Dr. Shapiro testified, however, that he had already rejected an ERCP because in assessing Luten's condition, he had determined that she was "too sick for [an ERCP] at the time, that she had symptoms of bile peritonitis . . . that needed to be taken care of before any diagnostic procedure like an ERCP would be done," and that she "needed a washout before anything else." Unlike in *Martin*, therefore, there was no basis on which a factfinder might have decided that Dr. Shapiro would have acted differently *had he been presented with more accurate information on the patient's condition.*

The dissent posits, however, that a jury could decide to disbelieve Dr. Shapiro's assertions and hold that Dr. Shapiro may have ordered an ERCP, a procedure of which he indisputably was aware, if only Rogers had mentioned it. This is pure speculation and conjecture. *Genna*, 286 Mich App at 418. Although a factfinder is always free to find a witness not to be credible, this case presents no evidentiary basis on which to conclude that the jury could choose to disbelieve Dr. Shapiro, other than the mere fact that it is free to do so. The dissent pejoratively characterizes Dr. Shapiro's testimony as "self-serving" and "biased." But his testimony was, if anything, self-implicating, as Dr. Shapiro took ownership of the decision, whether right or wrong, not to perform an ERCP. The dissent seeks to salvage a cause of action not only against Dr. Shapiro—which indisputably is proceeding, and is not even at issue in this appeal—but additionally against his physician's assistant for failing to challenge or go over the head of Dr. Shapiro. But the necessary evidentiary predicate for establishing that Rogers *caused* Luten's injuries is lacking in this case. Piling inference upon speculation is insufficient to survive summary disposition. See *Skinner v Square D Co*, 445 Mich 153, 166; 516 NW2d 475 (1984), quoting *Howe v Michigan CR Co*, 236 Mich 577, 584; 211 NW 111 (1926) ("Something more should be offered the jury than a situation which by ingenious interpretation suggests the mere possibility of defendant's negligence being the cause of the injury."). By the dissent's

rationale, it is difficult to see how *any* case would be dismissed on summary disposition, as the jury could choose to disbelieve any evidence offered by a party and substitute its own speculation in its stead.[5]  We decline to adopt such a rationale, and instead hew to the long-established principle that "more than a mere possibility" is required to demonstrate proximate cause.  *Craig*, 471 Mich at 87.

Plaintiff did not establish a genuine issue of material fact regarding whether Rogers's actions were a proximate cause of Luten's injuries.  See *Gorman*, 302 Mich App at 115; MCR 2.116(C)(10).  Accordingly, the trial court erred when it denied defendant's third motion for summary disposition as to proximate cause.

Reversed and remanded for entry of summary disposition in favor of defendants.  We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Jonathan Tukel

---

[5] The dissent cites *Taylor v Mobley*, 279 Mich App 309, 314 n 5; 760 NW2d 234 (2008), for the proposition that "the jurors' prerogative to disbelieve testimony, including uncontroverted testimony, is well established."  We note that our dissenting colleague also dissented in *Taylor*, and there stated, "In the summary disposition context, . . . a nonmoving party may not rely on the potential for jury disbelief to supplant its duty to produce evidence demonstrating the existence of a genuine issue of material fact."  *Taylor*, 279 Mich App at 321-322 (GLEICHER, J., dissenting).  We agree.