# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF ANNIE RUTH FLIE, by
JERMAINE HARRIS, Personal Representative,

        Plaintiff-Appellant,

v

OAKWOOD HEALTHCARE, INC., doing
business as OAKWOOD HOSPITAL &
MEDICAL CENTER, ANAND HIREMATH,
M.D., LUNINGNING V. REGALADO, M.D.,
NORMITA VICENCIO, M.D., PC,

        Defendants,

JOSEPH C. FINCH, D.O., and JOSEPH C.
FINCH, D.O., PC,

        Defendant-Appellees,

and

WILLIAM I. MICHELS III, D.O. and
DEARBORN FAMILY CLINIC, PC,

        Defendants.

UNPUBLISHED
December 12, 2017

No. 333389
Wayne Circuit Court
LC No. 14-006622-NH

Before: BECKERING, P.J., and O'BRIEN and CAMERON, JJ.

PER CURIAM.

In this medical malpractice action, plaintiff, Jermaine Harris, as personal representative of the estate of the decedent, Annie Ruth Flie, appeals as of right an order granting summary

disposition pursuant to MCR 2.116(C)(8) in favor of defendants, Joseph C. Finch, D.O. (Dr. Finch), and Joseph C. Finch, D.O., PC (Finch, PC).[1] We affirm.

On May 6, 2010, Dr. Finch performed a total arthroplasty, or knee replacement, on the decedent. Following the surgery, the decedent developed urosepsis and a consequential bowel infarction, which resulted in her passing away on May 9, 2010.

Following the decedent's passing, plaintiff filed a 12-count complaint, in which it alleged medical malpractice against Dr. Finch and ordinary negligence against Finch, PC. Plaintiff also sought to hold Finch, PC vicariously liable for Dr. Finch's medical malpractice. The basis for these claims was that prior to performing the decedent's surgery, Dr. Finch and Finch, PC, through its unlicensed medical assistant, failed to order, complete, and review the necessary preoperative studies. The complaint alleged that had Dr. Finch and Finch, PC acquired and reviewed the preoperative clearance before the decedent's surgery, they would have learned that the decedent was suffering from a urinary tract infection and required immediate antibiotic therapy, which would have prevented the sepsis that caused her death. Defendant moved to dismiss plaintiff's ordinary negligence claim against Finch, PC pursuant to MCR 2.116(C)(8) because, defendant argued, that claim sounded in medical malpractice. The trial court agreed and granted defendant's motion. Plaintiff subsequently agreed to dismiss with prejudice its medical malpractice claim against Dr. Finch and Finch, PC, and this appeal followed.

On appeal, plaintiff argues that the trial court erroneously granted summary disposition in favor of Finch, PC under MCR 2.116(C)(8) because its claim against Finch, PC sounded in ordinary negligence. We disagree. This Court reviews a trial court's decision on a motion for summary disposition de novo. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). As explained by our Supreme Court,

> A motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint. All well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant. A motion under MCR 2.116(C)(8) may be granted only where the claims alleged are so clearly unenforceable as a matter of law that no factual development could possibly justify recovery. When deciding a motion brought under this section, a court considers only the pleadings. [*Id*. at 119-120 (citations and quotation marks omitted).]

---

[1] Plaintiff also brought medical malpractice claims against Dr. Luningning Regalado, M.D., Dr. William I. Michels, III, D.O., Dr. Anand Hiremath, M.D., and the nursing staff of Oakwood Hospital, as well as general negligence claims against Oakwood Hospital and Normita Vicencio, M.D., PC. Plaintiff also sought to hold Dearborn Family Clinic, PC vicariously liable for the acts and omissions of Dr. Michels; Vicencio, PC vicariously liable for the acts and omissions of Dr. Regalado; and Oakwood Hospital vicariously liable for the acts and omissions of Dr. Finch, Dr. Hiremath, Dr. Michels, Dr. Regalado, and the nursing staff of Oakwood Hospital. These claims were dismissed by stipulation and are not now before this Court.

In this case, even though plaintiff couched its claim in terms of "ordinary negligence," the gravamen of a lawsuit is determined by reading the complaint as a whole and looking beyond the labels attached to a claim by a party. *Simmons v Apex Drug Stores Inc,* 201 Mich App 250, 253; 506 NW2d 562 (1993). "[A] complaint cannot avoid the application of the procedural requirements of a malpractice action by couching its cause of action in terms of ordinary negligence." *Dorris v Detroit Osteopathic Hosp Corp*, 460 Mich 26, 43; 594 NW2d 455 (1999) (citation and quotation marks omitted; alteration in original).

"The first issue in any purported medical malpractice case concerns whether it is being brought against someone who, or an entity that, is capable of malpractice." *Bryant v Oakpointe Villa Nursing Ctr*, 471 Mich 411, 420; 684 NW2d 864 (2004). MCL 600.5838a provides in pertinent part as follows:

> (1) For purposes of this act, *a claim based on the medical malpractice of a person or entity who is or who holds himself or herself out to be a licensed health care professional*, licensed health facility or agency, or an employee or agent of a licensed health facility or agency who is engaging in or otherwise assisting in medical care and treatment, *whether or not the licensed health care professional, licensed health facility or agency, or their employee or agent is engaged in the practice of the health profession in a* sole proprietorship, partnership, *professional corporation*, or other business entity, accrues at the time of the act or omission that is the basis for the claim of medical malpractice, regardless of the time the plaintiff discovers or otherwise has knowledge of the claim. *As used in this subsection*:
>
> * * *
>
> (b) *"Licensed health care professional" means an individual licensed or registered under article 15 of the public health code, Act No. 368 of the Public Acts of 1978, being sections 333.16101 to 333.18838 of the Michigan Compiled Laws, and engaged in the practice of his or her health profession in a* sole proprietorship, partnership, *professional corporation*, or other business entity. However, licensed health care professional does not include a sanitarian or a veterinarian. [Emphasis added.]

In *Potter v McLeary*, 484 Mich 397, 418; 774 NW2d 1 (2009), the Michigan Supreme Court held that the "specific addition of *professional corporations* to § 5838a was a clear statement by the Legislature that it intended a PC to be an entity against which a medical malpractice action could be asserted."

Here, Finch, PC, as a PC, was "an entity against which a medical malpractice action could be asserted." *Id*. However, the Michigan Supreme Court in *Bryant*, 471 Mich at 420-421, cautioned that the mere fact that a "claim may *possibly* sound in medical malpractice" does not mean "that the plaintiff's claim *certainly* sounds in medical malpractice."

To determine "whether the alleged claim sounds in medical malpractice," there is a two part test. *Id*. at 422. "In *Bryant*, [the Michigan Supreme] Court held that, to be subject to the

requirements for asserting medical malpractice, a claim must allege an action that (1) occurred within the course of a professional relationship and (2) poses questions of medical judgment outside the realm of common knowledge and experience." *Kuznar v Raksha Corp*, 481 Mich 169, 176-177; 750 NW2d 121 (2008), citing *Bryant*, 471 Mich at 422. Here, plaintiff does not contest that the second prong is satisfied. With regard to the first prong, the *Kuznar* Court explained that a "professional relationship exists if a person or an entity capable of committing medical malpractice was subject to a contractual duty to render professional health-care services to the plaintiff." *Kuznar*, 481 Mich at 177.[2]

In *Potter*, the Michigan Supreme Court acknowledged that when the entity capable of committing medical malpractice is a PC, the analysis for whether a professional relationship exists is more complex. *Potter* recognized that the Professional Service Corporation Act (PSCA), MCL 450.1101 *et seq.* (previously MCL 450.221 *et seq.*) dictates that "a PC can engage in two different types of action: those that are professional services and those that are not." *Potter*, 484 Mich at 413. Because a PC can engage in these different actions and can also sometimes be liable for ordinary negligence under the PCSA, see MCL 450.1285(2) (formerly

---

[2] Plaintiff argues at length that the trial court erred by not considering *Kuznar* in holding that the first prong of *Bryant* was satisfied. Plaintiff's main argument in this regard is that, based on *Kuznar*, a PC is not an entity with which a professional relationship can exist. The part of *Kuznar*'s holding that plaintiff relies upon is that Court's conclusion that a pharmacy and pharmacy technician are not covered by MCL 600.5838a(1), and, therefore, "the professional relationship test [was] not satisfied." *Kuznar*, 481 Mich at 177. However, after *Kuznar* was decided, the Michigan Supreme Court in *Potter*, 484 Mich at 417, expressly stated that this part of *Kuznar*'s reasoning was not applicable to a case involving a PC because MCL 600.5838a "expressly includes professional corporations within its definitional section." Nonetheless, plaintiff asserts that, based on *Kuznar*, "there can be no argument that [the medical assistant] or any other unlicensed members of [Finch, PC's] staff could qualify under §5838a as a 'licensed health care professional.'" Plaintiff further asserts that a PC cannot be classified as a "licensed health care professional" because "that definition encompasses only *natural* persons." However, *Potter*, 484 Mich at 418, expressly stated that anytime "a PC renders professional services, it is rendering those professional services through the licensed health care provider and the two are treated as though they are one entity." Thus, plaintiff's argument that a PC cannot be considered a licensed health care professional is without merit. Further, as will be explained in greater detail, based on *Potter*'s reasoning, if an employee of a PC was rendering *professional services* on behalf of the PC, then the actions of the PC, and by extension the actions of the employee, would be considered the actions of a licensed health care professional such that MCL 600.5838a(1) applies, regardless of whether the employee was licensed. See *id.*; see also *id.* at 412 ("For all practical purposes, the PC and the health care provider are treated as the same entity when professional services are involved."). Thus, the trial court did not err by not addressing *Kuznar*. Although plaintiff may disagree with the reasoning in *Potter*, "[a] decision of the Supreme Court is binding upon this Court until the Supreme Court overrules itself . . . ." *O'Dess v Grand Trunk Western R Co*, 218 Mich App 694, 700; 555 NW2d 261 (1996).

MCL 450.226), the *Potter* Court provided the following guidance for when a PC would be liable for medical malpractice:

> Where the services provided are *professional services* rendered by a licensed health care provider, any claim challenging those services as being negligent sound in medical malpractice, and the statutes governing medical malpractice apply. Where the services provided by a PC are not professional services as defined in MCL 450.225, the claim would not be subject to the medical malpractice requirements because those claims sound in ordinary negligence. [*Potter*, 484 Mich at 419.]

Thus, a negligence claim against a PC only sounds in medical malpractice when the negligence occurs while the PC is rendering professional services.

Here, it is clear that Finch, PC was providing the decedent with professional services at the time of the alleged negligence. Finch, PC, acting through Dr. Finch who was an orthopedic surgeon, was allegedly negligent during the course of the decedent's knee replacement surgery. See *id*. at 418 ("When a PC renders professional services, it is rendering those professional services through the licensed health care provider and the two are treated as though they are one entity."). Specifically, it was alleged that Finch, PC was negligent while preparing for the decedent's surgery because it did not properly review the decedent's preoperative clearance. A knee replacement surgery performed by an orthopedic surgeon is clearly a "professional service." See MCL 450.1282(b) (defining "professional service" to include "services provided by a . . . surgeon" that require "the provider [to] obtain a license . . . as a condition precedent to providing that service"). Finch, PC, an entity capable of committing malpractice, had a contractual duty to render these professional services to the decedent. Accordingly, plaintiff's action against Finch, PC satisfied the first prong of *Kuznar*. See *Potter*, 484 Mich at 419 ("Accordingly, in the instant case, the first prong of the *Kuznar* test is met because a PC is a covered entity under § 5838a and the services provided were professional services."). Because there is no dispute that the second prong was satisfied, the trial court properly concluded that plaintiff's claim sounded in medical malpractice.

On appeal, plaintiff argues that this case is distinguishable from *Potter* because the medical assistant that failed to obtain the decedent's preoperative clearance in this case was unlicensed. Plaintiff urges us to conclude that, because the negligent actor employed by Finch, PC was unlicensed, plaintiff's claim against Finch, PC necessarily sounds in ordinary negligence. In support of this argument, plaintiff relies on a footnote from *Potter* in which our Supreme Court stated as follows:

> [W]hen a claim asserted against a PC involves the actions of an employee or agent *who is unlicensed* or not rendering professional services as delineated in MCL 450.225, the NOI requirement would be unnecessary, because *such a claim would sound in ordinary negligence* rather than medical malpractice. [*Potter*, 484 Mich at 403 n 4 (emphasis added).]

Initially, we note that this footnote is likely dicta, and therefore not binding precedent, because it was "unnecessary to determine the case at hand . . . ." *People v Peltola*, 489 Mich 174, 190 n 32;

-5-

803 NW2d 140 (2011). The employee of the PC in *Potter* was licensed, so it was unnecessary for our Supreme Court to decide whether a claim based on the acts of a PC's unlicensed employee necessarily sounds in ordinary negligence. Regardless, based on our reading of *Potter*, we disagree with plaintiff's contention that any cause of action against a PC based on the acts of the PC's unlicensed employee *necessarily* sounds in ordinary negligence.

According to *Potter*, a PC is liable in ordinary negligence only "[w]here the services provided by [the] PC are not professional services as defined in MCL 450.225 . . . ." *Potter*, 484 Mich at 419. MCL 450.225, which was replaced with MCL 450.1285(1) effective January 2, 2013, PA 2012 No. 569, provided as follows:

> A corporation organized and incorporated under this act shall not render professional services within this state except through its officers, employees, and agents who are duly licensed or otherwise legally authorized to render the professional services within this state. The term employee does not include secretaries, bookkeepers, technicians, and other assistants who are not usually and ordinarily considered by custom and practice to be rendering professional services to the public for which a license or other legal authorization is required.

Similarly, MCL 450.1285(1), the statute that replaced MCL 450.225, provides:

> A professional corporation shall not provide professional services in this state except through its officers, employees, and agents who are duly licensed or otherwise legally authorized to provide the professional services in this state. The term "employee" does not include a secretary, bookkeeper, technician, or other assistant who is not usually and ordinarily considered by custom and practice to be providing a professional service to the public for which a license or other legal authorization is required.

Based on these statutes, a PC can render professional services through its officers, employees, and agents who are "duly licensed *or otherwise legally authorized*" to provide such services in this state. MCL 450.1285(1) and MCL 450.225 (emphasis added). Thus, we cannot conclude, as plaintiff urges us to, that an unlicensed employee's actions necessarily subject a PC to liability in ordinary negligence. Such a conclusion runs counter to *Potter*'s directive that ordinary negligence is determined based on whether professional services were provided pursuant to MCL 450.225 (now MCL 450.1285(1)), which expressly recognizes that both licensed *and* unlicensed employees can render professional services.

Based on our reading of *Potter*, the important portion of footnote 4 is not the "unlicensed" portion relied on by plaintiff, but rather the phrase "as delineated in MCL 450.225." *Potter*, 484 Mich at 403 n 4. MCL 450.225 (now MCL 450.1285(1)) did not define "professional services"; a different section did that. See MCL 450.222 (now MCL 450.1282). MCL 450.225 instead defined who in a PC could provide professional services through the PC. Based on the text from MCL 450.225 (now MCL 1285(1)), the *Potter* Court's holding was clearly that a PC would be liable in ordinary negligence for the acts of employees that provide services through the PC that are "not usually and ordinarily considered by custom and practice to

be . . . professional services . . . for which a license or other legal authorization is required," such as a secretary. MCL 450.225 and MCL 450.1285(1).

Therefore, whether an employee is licensed is not necessarily relevant, and the relevant inquiry is instead whether the employee provided services through the PC that were considered professional services. A PC is considered a "licensed health care provider" when the PC renders professional services, see *id*. at 418 ("When a PC renders professional services, it is rendering those professional services through the licensed health care provider and the two are treated as though they are one entity."); *id*. at 412 ("For all practical purposes, the PC and the health care provider are treated as the same entity when professional services are involved."). Thus, if an employee is one that provides professional services through the PC as defined in MCL 450.1285(1) (previously MCL 450.225), then the actions of the PC, and therefore of the employee, are treated as the actions of the licensed health care provider, regardless of the employee's licensure. See *id*. at 418-419.

In this case, the medical assistant responsible for ordering the decedent's preoperative clearance was acting on behalf of Finch, PC. The relevant inquiry is whether this employee was engaged in providing professional services such that the employee's actions, and therefore the PC's actions, were considered to be those of Dr. Finch, a licensed health care provider. Clearly, acquiring a preoperative clearance to prepare a patient for an arthroplasty is a professional service because it is "usually and ordinarily considered by custom and practice to be providing a professional service to the public for which a license or other legal authorization is required." MCL 450.1285(1). And because the medical assistant was performing this professional service on behalf of Finch, PC, she is treated as though she were acting "through" Dr. Finch, a "licensed health care provider." *Potter*, 484 Mich at 418. Accordingly, the trial court properly determined that this case sounds in medical malpractice.

Affirmed.

/s/ Jane M. Beckering
/s/ Colleen A. O'Brien
/s/ Thomas C. Cameron