*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

EVA LAFAVE,

Plaintiff-Appellant,

v

ALLIANCE HEALTHCARE SERVICES, INC.,
formerly known as ALLIANCE IMAGING, INC.,
doing business as ALLIANCE HEALTHCARE
RADIOLOGY,

Defendant-Appellee.

FOR PUBLICATION
April 2, 2020
9:05 a.m.

No. 345986
Marquette Circuit Court
LC No. 17-055666-NH

Before: TUKEL, P.J., and MARKEY and SWARTZLE, JJ.

SWARTZLE, J.

In *Bryant v Oakpointe Villa Nursing Ctr*, 471 Mich 411; 684 NW2d 864 (2004), our Supreme Court distinguished between a claim of ordinary negligence and one of medical malpractice with a two-pronged test. First, is there a professional relationship between the plaintiff and the defendant, and second, does the claim involve a question of medical judgment? As a preface to this two-pronged test, however, it must be established that the particular defendant is one actually capable of committing professional malpractice (as opposed to ordinary negligence).

Here, the prefatory condition is fatal to defendant's argument that this is a medical-malpractice case rather than one sounding in ordinary negligence. Accordingly, we reverse the trial court's grant of summary disposition to defendant and remand for proceedings consistent with this opinion.

## I. BACKGROUND

This case arises from injuries that plaintiff, Eva LaFave, sustained when she fell off a magnetic-resonance-imaging (MRI) examination table in a mobile-MRI unit. Because the underlying facts have little bearing on whether defendant is an entity capable of committing professional malpractice, we offer only an abbreviated version of the factual allegations here.

-1-

In May 2015, plaintiff went to the emergency room of Bell Memorial Hospital in Ishpeming, complaining of back pain. At the conclusion of her examination, plaintiff obtained a prescription for an MRI. Several days later, plaintiff returned to the hospital to undergo the MRI. Because the hospital did not have its own MRI machine, the test was performed in a mobile-MRI unit owned and operated by defendant, Allied Healthcare Services, Inc. The mobile-MRI unit is enclosed in a trailer and is towed from hospital to hospital to provide MRI coverage for otherwise underserved rural populations.

At Bell Memorial, the mobile-MRI unit was parked adjacent to the hospital building. After she presented her prescription for the MRI, plaintiff was greeted by defendant's employee, Chelsea Perry, an MRI technician certified by the American Registry of Radiologic Technologist (ARRT). Plaintiff experienced severe pain while inside the MRI machine and asked to be removed. After removing plaintiff, Perry went to the next room to call for assistance. While briefly unattended, plaintiff fell off the MRI's examination table and was injured.

Plaintiff subsequently sued defendant. In her amended complaint, plaintiff set forth three counts against defendant. She alleged that defendant was vicariously liable for its employees' (1) ordinary negligence in leaving plaintiff alone on the MRI table, and (2) ordinary negligence in failing to provide adequate staff in the mobile-MRI unit. Plaintiff also alleged in the alternative a medical-malpractice claim, contending that the same conduct constituted a breach of the local standard of care for medical professionals.

Following discovery, defendant moved for summary disposition under MCR 2.116(C)(8) and (C)(10). Defendant argued that, despite the fact that plaintiff had labeled two of the counts in her amended complaint as claims for ordinary negligence, all of her claims sounded in medical malpractice. Therefore, plaintiff's claims for ordinary negligence were subject to summary disposition. With regard to plaintiff's medical-malpractice claim, defendant argued that because plaintiff's standard-of-care expert had admitted in her deposition that she was unfamiliar with the local standard of care that applied in this matter, summary disposition of the medical-malpractice claim was also appropriate.

The trial court granted defendant's motion. Citing *Bryant*, the trial court held that plaintiff's claims captioned as ordinary negligence actually presented claims of medical malpractice because (1) a professional relationship existed between plaintiff and defendant, and (2) the claims involved questions of medical judgment that were outside the common knowledge and experience of lay jurors. Turning to plaintiff's claim captioned as medical malpractice, the trial court held that plaintiff had failed to produce any substantively admissible evidence in support of the alleged standard of care. Therefore, the trial court granted defendant summary disposition under MCR 2.116(C)(10) on all of plaintiffs' claims.

This appeal followed.

## II. ANALYSIS

Plaintiff's primary contention on appeal is that the trial court erred by concluding that the gravamen of her claims was medical malpractice, not ordinary negligence. We review de novo a trial court's ruling regarding a motion for summary disposition. *Heaton v Benton Constr Co*, 286

Mich App 528, 531; 780 NW2d 618 (2009). This appeal involves various legal questions of statutory construction and the distinction between ordinary negligence and medical malpractice, all of which we review de novo. *Costa v Community Emergency Med Servs, Inc*, 475 Mich 403, 408; 716 NW2d 236 (2006) (statutory construction); *Trowell v Providence Hosp & Med Ctrs, Inc*, 502 Mich 509, 517; 918 NW2d 645 (2018) (ordinary negligence versus medical malpractice).

*Ordinary Negligence and Medical Malpractice, Generally.* "A medical malpractice claim is sometimes difficult to distinguish from an ordinary negligence claim. But the distinction is often critical." *Trowell*, 502 Mich at 517-518. A court determines the gravamen of a claim by examining the underlying facts rather than the label attached to the claim. *Dorris v Detroit Osteopathic Hosp Corp*, 460 Mich 26, 45-46; 594 NW2d 455 (1999).

In *Bryant*, 471 Mich at 422, our Supreme Court set forth the now-familiar two-pronged test for distinguishing between ordinary negligence claims and medical malpractice claims: "(1) whether the claim pertains to an action that occurred within the course of a professional relationship; and (2) whether the claim raises questions of medical judgment beyond the realm of common knowledge and experience." If the two questions are answered in the affirmative, then the claim sounds in medical malpractice, but with a necessary (though sometimes overlooked) caveat.

As our Supreme Court cautioned in *Bryant*, "The *first* issue in any purported medical malpractice case concerns whether it is being brought against someone who, or an entity that, is capable of malpractice." *Id*. at 420 (emphasis added). This is a necessary condition for bringing a malpractice suit. "A malpractice action cannot accrue against someone who, or something that, is incapable of malpractice." *Adkins v Annapolis Hosp*, 420 Mich 87, 95; 360 NW2d 150 (1984).

The scope of who can be sued for medical malpractice has expanded over the years. Initially, "[u]nder the common law, only physicians and surgeons were potentially liable for medical malpractice." *Kuznar v Raksha Corp*, 481 Mich 169, 177; 750 NW2d 121 (2008). With MCL 600.5838a, the Legislature expanded the scope of who may be subject to a medical-malpractice action to include other professionals and entities. *Bryant*, 471 Mich at 420 (citing *Adkins*, 420 Mich at 94-95). Specifically, the Legislature provided for medical-malpractice claims to be brought against "a person or entity who is or who holds himself or herself out to be a licensed health care professional, licensed health facility or agency, or an employee or agent of a licensed health facility or agency." MCL 600.5838a(1). For these purposes, a "licensed health facility or agency" means "a health facility or agency licensed under article 17 of the public health code," and a "licensed health care professional" means "an individual licensed or registered under article 15 of the public health code." MCL 600.5838a(1)(a),(b).

*MRI Provider Not Capable of Professional Malpractice (as a Principal).* In this case, it is undisputed that defendant does not qualify as a "licensed health facility or agency." There is no question that defendant is not (and cannot under current law) be licensed under article 17 of the public health code. Furthermore, although Bell Memorial does qualify as a "licensed health facility or agency" under article 17, it is not a party to this case. At oral argument before this Court, defendant expressly denied that it was claiming that it acted as the hospital's agent (by contract). Therefore, even though an "agent of a licensed health facility . . . engaging in or otherwise assisting in medical care or treatment," MCL 600.5838a(1), can be sued for medical

malpractice, *Bryant*, 471 Mich at 420, 425, defendant has disavowed any contention that it was the hospital's contractual agent when it provided plaintiff with MRI services. Accordingly, we conclude that defendant is not itself an entity that could have committed malpractice against plaintiff.

*MRI Technician Cannot Be Licensed or Registered Under Article 15*. The parties dispute, however, whether Perry qualifies as a "licensed health care professional" who is capable of committing malpractice. Plaintiff argues that Perry does not qualify as a "licensed health care professional" because she is not "an individual licensed or registered under article 15 of the public health code." MCL 600.5838a(1)(b). Defendant concedes that licensure is not available for MRI technicians in this state. Defendant nonetheless argues that Perry qualifies as a "licensed health care professional" because she is certified by the ARRT.

There are several flaws with defendant's argument. The Legislature made clear that the appropriate test is whether an individual is "licensed or registered *under article 15 of the public health code*." MCL 600.5838a(1)(b) (emphasis added). Article 15 is found at MCL 333.16101 to 333.18838. As defendant has conceded that Perry was not licensed, we focus on whether she was "registered" for purposes of the malpractice claim. Article 15 defines "registration" as "an authorization only for the use of a designated title which use would otherwise be prohibited under this article," and a "registrant" means "an individual to whom a registration, a specialty certification, or a health profession specialty field license is issued under that part." MCL 333.16108(2),(3).

While Perry holds a certification to be an MRI technician, this certification does not qualify as "a specialty certification" under article 15. As defined in the code, " '[s]pecialty certification' means an authorization to use a title by a *licensee* who has met qualifications established by a board for registration *in a health profession specialty field*." MCL 333.16109(1) (emphasis added). In turn, "health profession specialty field" is defined as "an area of practice established under this article that is within the scope of activities, functions, and duties of a *licensed* health profession and that requires advanced education and training *beyond that required for initial licensure*." MCL 333.16105(3) (emphasis added). Thus, a person can hold a specialty certification or health profession specialty field license only in a field for which the person is already licensed. And defendant has already conceded that Perry was not licensed for purposes of article 15. Although there appears to be some redundancy between being "licensed" under article 15 and being "registered" under the article (as several ways of being a "registrant" also involve being "licensed"), relatively minor, partial redundancies are not fatal when the meaning of the statutory text is otherwise plain. See, e.g., *Mercy Hosp, Inc v Azar*, 891 F3d 1062, 1068 (2018); Scalia & Garner, *Reading Law: The Interpretation of Legal Texts*, (St. Paul: Thompson/West, 2012), pp 176-177.

Defendant further argues that, by virtue of the ARRT certification, Perry works in a "health profession" under MCL 333.16105(2). Once again, however, resort to the statutory definition belies defendant's claim. The cited provision defines a "health profession" as "a vocation, calling, occupation, or employment performed by an individual acting pursuant to a license or registration issued *under this article*," i.e., article 15. MCL 333.16105(2). As noted, defendant concedes that Perry is not licensed under article 15, and as explained, Perry is not registered under that article.

*MRI Technician Not Otherwise Capable of Medical Malpractice (as a Principal).* Finally, defendant argues in the alternative that a person or entity need not qualify as a "licensed health facility or agency" or a "licensed health care professional" under MCL 600.5838a(1) to be susceptible to a claim for medical-malpractice. Rather, according to defendant, our Supreme Court set forth in *Bryant*, 471 Mich at 421, n 9, that a claim sounds in medical malpractice, rather than ordinary negligence, whenever "the particular assistance rendered to that patient involved a professional relationship and implicated a medical judgment."

But as we have already explained, the *Bryant* Court also made clear that there is a prefatory condition for finding that a claim sounds in medical malpractice—i.e., the person or entity is capable of committing such malpractice (as opposed to ordinary negligence). *Id.* at 420. The Court reiterated this condition in *Kuznar*, 481 Mich at 177, when it explained that two parties can have a "professional relationship" for purposes of medical malpractice only when one of the parties is "a person or an entity capable of committing medical malpractice." Although the *Bryant* Court cautioned that MCL 600.5838a(1) is "an accrual statute that indicates when a medical malpractice cause of action accrues," the Court also stated that this provision set forth "the category of who may be subject to a medical malpractice action." *Bryant*, 471 Mich at 420-421; see also *Sabbagh v Hamilton Psychological Servs PLC*, ___ Mich App ___, ___; ___ NW2d ___ (2019) (Docket No. 342150); slip op at 6. Defendant has not offered this Court any statute or case law to suggest that a person or entity who does not fall squarely within the category set out in MCL 600.5838a(1) (and articles 17 and 15 by reference) can somehow otherwise qualify as a professional susceptible to a medical-malpractice suit. We conclude that the Legislature has expressly identified the category of persons or entities who can be subject to a medical-malpractice suit, and if the category is to be expanded to include an MRI technician or MRI provider, then it is the place of the Legislature, not this Court, to make the expansion. See *D'Agostini Land Co, LLC v Dep't of Treasury*, 322 Mich App 545, 560; 912 NW2d 593 (2018).

## III.  CONCLUSION

In sum, neither an MRI technician nor an MRI provider qualifies as a person or entity capable of committing medical malpractice under current law, and defendant has disclaimed any reliance on whether it was an agent of the hospital for purposes of MCL 600.5838a(1). Therefore, the gravamen of plaintiff's claim is one sounding in ordinary negligence. Given this conclusion, we decline to address whether the trial court erred by striking plaintiff's medical-malpractice expert witness.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. Plaintiff, having prevailed full, is entitled to tax costs under MCR 7.219.

/s/ Brock A. Swartzle
/s/ Jonathan Tukel
/s/ Jane E. Markey