*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JONATHAN SCHIRMER and DEBBIE
SCHIRMER,

Plaintiffs-Appellants,

v

JAMES ROBERT WILLIAMS, ROBERT L.
HUNTER, SR., and NORTH FLIGHT, INC.,

Defendants-Appellees.

UNPUBLISHED
September 14, 2023

No. 362129
Alpena Circuit Court
LC No. 2017-008120-NO

Before: SWARTZLE, P.J., and O'BRIEN and FEENEY, JJ.

PER CURIAM.

Plaintiffs, Jonathan Schirmer and Debbie Schirmer, appeal as of right the trial court's order granting defendants' motion for summary disposition under MCR 2.116(C)(7). We reverse and remand for further proceedings.

## I. BACKGROUND

On August 2, 2016, Jonathan was admitted to MidMichigan Medical Center (MMC) in Alpena due to concerns that he was experiencing a heart attack. Jonathan sought to be treated by his primary care physician at a different hospital—McLaren North in Petoskey—but no beds were available at that hospital until August 3, so he stayed at MMC overnight.

The following day, a nurse practitioner signed a transfer authorization form for ambulance services provided by defendant North Flight, Inc. That form stated that Jonathan's physical condition made "transportation by ambulance medically necessary" in part because "[t]ravel by means other than ambulance (i.e., private vehicle) could endanger [the] patient's health" given the possibility of an "MVA" (motor vehicle accident). Jonathan's transfer via ambulance was not considered an emergency because he was stable.

Defendant Robert L. Hunter, Sr., was the paramedic for the ambulance provided by North Flight, and defendant James Robert Williams was the driver and emergency medical technician

-1-

(EMT).  During the transport, Hunter provided cardiac monitoring, administered heparin intravenously, and checked Jonathan's vital signs every 30 minutes.

The events giving rise to this case occurred after the ambulance arrived at McLaren North, and were captured by the hospital's security camera.  Williams backed the ambulance into the hospital's entryway, exited, walked to the ambulance's rear, and opened the doors.  Hunter then exited and stood off to the side to allow Williams to begin the offloading process.  Williams proceeded to pull Jonathan's cot out of the ambulance with Jonathan strapped in.  As Williams pulled, the safety latch attached to the ambulance's floor did not catch the safety bar attached to the cot's head.  Plaintiffs' expert, Timothy Robbins, opined that, based on his review of the ambulance's service records and North Flight's representation after the incident that the safety latch was functioning normally at the relevant times, the safety latch did not catch because Hunter prematurely released it.  Robbins further noted that Williams never verified that the latch was engaged while he continued pulling Jonathan's cot out of the ambulance, and Hunter failed to visualize the safety hook catching the safety bar while Williams continued pulling.  But regardless of why the safety latch did not catch the cot's safety bar, the result was that the safety latch never stopped the cot's progress, so the cot fully came out of the ambulance, knocked Williams to the ground, and fell sideways onto the pavement with Jonathan strapped to it.  Both Hunter and Williams quickly attended to Jonathan, unstrapped him, and helped him onto his feet.

On November 6, 2017, plaintiffs filed a civil complaint against defendants, alleging that the incident and their physical and emotional injuries were caused by defendants' negligence or gross negligence.  Plaintiffs' complaint alleged that, while pulling Jonathan out of the ambulance, Williams "lost control of the stretcher, which did not latch and or its wheeled legs did not extend downward, and [Jonathan] was caused to fall . . . ."  Plaintiffs claimed that Williams and Hunter owed a duty to plaintiffs "to operate, maintain, load, and unload the [ambulance] in a reasonably safe manner consistent with Michigan common law, statutes, and local ordinances," and that they breached those duties in the following ways:

> a.  By dropping Plaintiff JONATHAN SCHIRMER and letting him fall, by the single Defendant WILLIAMS, when it was a two-person job, with Defendant HUNTER standing by with clipboard in hand;
>
> b.  That the conduct herein complained of is substantially more than ordinary negligence, and amounts to gross negligence and demonstrates a reckless lack of concern for whether an injury results, all while Plaintiff JONATHAN SCHIRMER'S wife, Plaintiff DEBBIE SCHIRMER and family members looked on in horror and shock;
>
> c.  Failing to properly load and or unload the stretcher upon which Plaintiff JONATHAN SCHIRMER was located in a reckless, grossly negligent, willful, and wonton manner in disregard of Plaintiffs safety in violation of MCL 257.626;
>
> d.  Violation of MCL 257.626(b) for operating and or unloading the vehicle and in a grossly negligent, careless manner likely to endanger persons and or passengers and Plaintiff JONATHAN SCHIRMER in particular;

-2-

        e. Such other acts of negligence and or gross negligence which Plaintiffs pray leave to Complain of when ascertained.

After a lengthy procedural history, including an appeal to this Court,[1] defendant moved for summary disposition under MCR 2.116(C)(7), arguing that plaintiffs' claims sounded in medical malpractice, and thus plaintiffs were required to comply with the various statutory requirements applicable to medical malpractice claims, which plaintiffs failed to do. After a hearing, the trial court agreed that plaintiffs' claims sounded in medical malpractice and accordingly granted defendants' motion for summary disposition. This appeal followed.

## II. STANDARD OF REVIEW

A trial court's decision on whether a claim sounds in medical malpractice or ordinary negligence is reviewed de novo. *Bryant v Oakpointe Villa Nursing Ctr*, 471 Mich 411, 419; 684 NW2d 864 (2004). Likewise, a trial court's decision on a motion for summary disposition is reviewed do novo. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). Defendants moved for summary disposition under MCR 2.116(C)(7). "In making a decision under MCR 2.116(C)(7), we consider all documentary evidence submitted by the parties, accepting as true the contents of the complaint unless affidavits or other appropriate documents specifically contradict it." *Bryant*, 471 Mich at 419.

## III. ANALYSIS

On appeal, plaintiffs argue that their claims sound in ordinary negligence. We agree.

The seminal case addressing how to distinguish a claim sounding in medical malpractice from a claim sounding in ordinary negligence is *Bryant*. There, our Supreme Court explained that "a court must ask two fundamental questions in determining whether a claim sounds in ordinary negligence or medical malpractice: (1) whether the claim pertains to an action that occurred within the course of a professional relationship; and (2) whether the claim raises questions of medical judgment beyond the realm of common knowledge and experience." *Bryant*, 471 Mich at 422. If both questions are answered in the affirmative, then the claim sounds in medical malpractice. *Id*. On appeal, plaintiffs concede that the answer to the first question is "yes," so the only issue is whether plaintiffs' claims raise questions of medical judgment beyond the realm of common knowledge or experience.

"If the reasonableness of the health care professionals' action can be evaluated by lay jurors, on the basis of their common knowledge and experience, it is ordinary negligence." *Id*. at 423. "If, on the other hand, the reasonableness of the action can be evaluated by a jury only after having been presented the standards of care pertaining to the medical issue before the jury

---

[1] That appeal concerned the application of the Emergency Medical Services Act (EMSA) to plaintiffs' claims. This Court held that the EMSA was inapplicable because plaintiffs' alleged injuries occurred "during transport of the cot, not from" any treatment provided to Jonathan. *Schirmer v Robert*, unpublished per curiam opinion of the Court of Appeals, issued July 8, 2021 (Docket No. 347378), p 11.

explained by experts, a medical malpractice claim is involved." *Id.* See also *Dorris v Detroit Osteopathic Hosp Corp*, 460 Mich 26, 46; 594 NW2d 455 (1999) ("The determination whether a claim will be held to the standards of proof and procedural requirements of a medical malpractice claim as opposed to an ordinary negligence claim depends on whether the facts allegedly raise issues that are within the common knowledge and experience of the jury or, alternatively, raise questions involving medical judgment."). This determination is fact-specific, meaning that a court "must examine the particular factual setting of the plaintiff's claim" to determine whether it "implicate[s] medical judgment." *Bryant*, 471 Mich at 421 n 9.

Examining the particular factual setting that gave rise to plaintiffs' claims, we conclude that plaintiffs' claims do not implicate medical judgment. Evidence established how the cot was supposed to be unloaded from the ambulance—the cot was to be pulled out until its safety bar caught the ambulance's safety latch, then the cot's wheels were to be lowered and locked into place, then the cot's safety bar was to be released from the safety latch and the cot could be pulled away from the ambulance. Evidence was also presented about what went wrong while Jonathan was being unloaded from the ambulance—the safety latch did not catch the cot's safety bar. Nothing about this process or what went wrong implicates medical judgment; nothing about Jonathan's medical condition affected how he was to be unloaded from the ambulance, nor was any special level of sophistication required to safely effectuate Jonathan's move. See *id.* (explaining that courts can consider "the medical condition of the plaintiff or the sophistication required to safely effectuate the move" to determine whether moving a patient implicates medical judgment).[2] Robbins opined that the safety latch did not catch the cot's safety bar because Hunter released the latch prematurely, and that, regardless, Jonathan fell because Hunter did not visualize whether the safety latch caught the cot's safety bar while Williams was pulling the cot out, and Williams did not verify with Hunter that the safety latch caught the cot's safety bar as he continued pulling out the cot. Lay jurors could evaluate the reasonableness of these actions solely on the basis of the jurors' own knowledge and experience.

In reaching the opposite conclusion, the trial court reasoned that the jury could not evaluate the reasonableness of Hunter's and Williams' actions unless someone explained to the jury how the safety latch and cot function together when unloading a cot from the ambulance. We agree with the trial court that such testimony will likely be necessary, but disagree that the need for such testimony means that plaintiffs' claims sound in medical malpractice. *Bryant* explained that a case sounds in medical malpractice if it requires expert testimony pertaining to "questions of *medical judgment*," *id.* (emphasis added), and testimony about how a safety latch is intended to function does not implicate medical judgment. After having the safety-latch system explained to them, jurors could readily evaluate the reasonableness of Hunter's and Williams' actions based on the jurors' common knowledge and experience.

In arguing against this result, defendants contend:

---

[2] We emphasize that this is a fact-specific inquiry. We do not hold that medical judgment is never implicated when a patient is being unloaded from an ambulance; we hold only that medical judgment was not implicated for *this* plaintiff under *these* circumstances.

-4-

> A layperson is simply not in a position to know, for example, how or where to strap [Jonathan] to the stretcher, what to do with the IV bag and tubes while [Jonathan] was being moved, how to position the stretcher and/or the attending personnel to best lower [Jonathan] from the ambulance, how the stretcher itself operated, or how to prepare for any medical complications that could arise given [Jonathan's] individual medical history, condition, symptoms, and presentation.

This argument, however, fails to "examine the particular factual setting of" plaintiffs' claims. *Bryant*, 471 Mich at 421 n 9. Plaintiffs allege that Williams and Hunter were negligent because they failed to verify that the safety latch caught the cot's safety bar while pulling Jonathan out of the ambulance, and none of the considerations identified by defendants play any role in assessing the reasonableness of Hunter's and Williams' actions in this context. No one testified that the manner in which Jonathan was strapped to the cot affected how Hunter and Williams unloaded him from the ambulance or how Hunter and Williams monitored whether the safety latch caught the cot's safety bar. Likewise, no one testified that the "IV bags and tubes" made it more difficult for Hunter and Williams to see whether the cot's safety bar caught the ambulance's safety latch or otherwise affected how they unloaded Jonathan's cot from the ambulance. The same holds true for virtually every other consideration identified by defendants. Thus, while certain aspects of Jonathan's transportation may raise questions of medical judgment, the particular factual setting of plaintiffs' claims raise issues that are wholly within the common knowledge and experience of laypersons. Accordingly, plaintiffs' claims sound in ordinary negligence.[3]

Reversed and remanded for further proceedings. We do not retain jurisdiction.

/s/ Brock A. Swartzle
/s/ Colleen A. O'Brien
/s/ Kathleen A. Feeney

---

[3] While not necessarily relevant to our disposition, there seems to be a dispute between the parties about whether Jonathan was properly strapped to the cot when he was being transported and unloaded from the ambulance. In their complaint, however, plaintiffs never alleged this fact and consequently never asserted a claim based on such an allegation. Now, on appeal, while plaintiffs assert that Jonathan was improperly strapped to the cot, they do not represent that they are asserting a claim for negligence based on this fact. From this, we can only conclude that plaintiffs are not asserting a claim for negligence premised on the fact that Jonathan was improperly strapped to the cot. Accordingly, for clarity, we offer no opinion on whether such a claim would sound in ordinary negligence or medical malpractice.